(No. 52637.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
## v. LOUIS SMITHERS, Appellee.

*Opinion filed December 1, 1980.*

Tyrone C. Fahner and William J. Scott, Attorneys General, of Springfield and Michael M. Mihm, State's Attorney, of Peoria (Donald B. Mackay, Melbourne A. Noel, Jr., and Maureen Cain, Assistant Attorneys General, of Chicago, and John X. Breslin and Rita F. Kennedy, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Ronald L. Hamm, of Hamm & Hanna, Ltd., of Peoria, for appellee.

Fred E. Inbau, of Chicago, Wayne W. Schmidt, of San Francisco, and James P. Manak, of Glen Ellyn (Richard J. Brzeczek, and Joseph C. Haughey, of the Chicago Police Department, and James A. Murphy, of the Peoria Police Department, of counsel), for *amici curiae* Americans For Effective Law Enforcement, Inc., *et al.*

MR. JUSTICE RYAN delivered the opinion of the court:

This appeal concerns the admissibility of evidence obtained during a police "stop and frisk." The defendant was found in possession of a pistol and charged with unlawful use of weapons. Prior to trial, the defendant filed a motion to suppress the pistol taken from him following a pat-down search. The Peoria County circuit court allowed the motion. The appellate court affirmed, with one justice dissenting. (75 Ill. App. 3d 883.) We granted the State leave to appeal under our Rule 315 (73 Ill. 2d R. 315). We find the search to have been reasonable and reverse the judgment of the appellate court.

At approximately 4 a.m. on February 10, 1978, Officers Robert Nelson and Alan Meisener of the Peoria city police department were radio dispatched to the Spanish Lady Tavern. A telephone call to the police station several minutes earlier indicated there was a "man with a gun" at the tavern. Officer Meisener stated that when he arrived at the tavern he heard yelling from inside. There were approximately 20 patrons in the tavern at that time. He entered the front door and noticed the defendant, Louis Smithers, walking toward him. The defendant was wearing a large goose-down coat, which was buttoned and zipped. The defendant, then 10 to 15 feet from Officer Meisener, reversed direction and walked toward the tavern's rear exit. Officer Meisener testified that he asked the bartender, Robert Foraker, if the defendant had been involved in the fracas. The bartender responded, "Yes."

Officer Meisener then instructed the second officer, Robert Nelson, to stop the defendant. Officer Nelson ran around the building and stopped the defendant as he was leaving the passageway connected to the tavern's rear exit. Without his consent, the defendant was then given a pat-down search. The search produced a gun. Louis Smithers was then charged with two counts of unlawful use of weapons. Ill. Rev. Stat. 1977, ch. 38, pars. 24—1(a)(4), 24—1(a)(10).

It should be noted that there were certain discrepancies in the evidence. The bartender testified that it was not he who associated the defendant with the trouble. Rather, he stated, it was one of the patrons. He did, however, acknowledge hearing someone say, "there he goes out the back door," referring to the defendant.

A second discrepancy involves the presence of the defendant in the tavern. While the officers and the bartender state that they saw the defendant in the tavern, the defendant contends that he never actually entered the tavern. He approached the tavern, but after seeing the commotion inside, turned around and walked back down the gangway.

After hearing the testimony, the circuit court found that there were not sufficient articulable facts to support the stop and frisk of the defendant. The officer's action was based on a "mere hunch," the court stated, and the motion to suppress the gun was granted. The appellate court affirmed. We find that there were sufficient articulable facts to authorize the stop and frisk, and that the circuit court's suppression order was contrary to the manifest weight of the evidence.

The Constitution of the United States provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ***." (U.S. Const., amend. IV.)

The provision applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. (See *Davis v. Mississippi* (1969), 394 U.S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1394; *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) The fourth amendment requires that any seizure be "reasonable." As with other categories of police action subject to fourth amendment constraints, the reasonableness of such seizures depends upon a balancing of the public's interest and the individual's right to personal security free from arbitrary interference by law officers. (See *United States v. Brignoni-Ponce* (1975), 442 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574; *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; W. Schaefer, The Suspect and Society, Criminal Procedure and Converging Constitutional Doctrines (1967); Caracappa, *Criminal Law and Criminal Procedure: Some Current Issues,* 16 Duq. L. Rev. 499, 504 (1977-78).) Although the officer need not have probable cause to arrest or search in order to stop and frisk (see *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889), he must have knowledge of sufficient articulable facts at the time of the encounter to create a reasonable suspicion that the person in question has committed, or is about to commit, a crime. *Brown v. Texas* (1979), 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637; *Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880; *Beck v. Ohio* (1964), 379 U.S. 89, 96, 13 L. Ed. 2d 142, 148, 85 S. Ct. 223, 228.

The fact that an officer has reason to stop a citizen does not necessarily justify the further intrusion of a search for weapons. The officer may conduct a pat-down search only if he has reason to believe that he is dealing with an armed and dangerous individual. (See *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct.

1868; *Adams v. Williams* (1972), 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921.) Here again the officer's belief is not judged by the probable-cause test. He need only have the reasonable belief that either his safety, or that of others, is in danger. See *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889.

These same concerns are found in our Code of Criminal Procedure of 1963. Section 107—14 of the Code provides:

> "A peace officer *** may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense ***." (Ill. Rev. Stat. 1977, ch. 38, par. 107—14.)

Similarly, section 108—1.01 provides:

> "When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons." (Ill. Rev. Stat. 1977, ch. 38, par. 108—1.01.)

These sections of the Code were considered in *People v. McGowan* (1977), 69 Ill. 2d 73. In *McGowan* two officers observed the defendant and another man emerging from an industrial area about 1 a.m. Both were wearing black clothing. The men were stopped by the officers. The defendant received a pat-down search, which produced a gun. The defendant was charged with unlawful use of weapons. At the hearing to suppress the gun, the officer testified that he stopped the men because of their clothes, the time of night, and his knowledge of the area. The motion was denied and the defendant was convicted.

As with other cases involving a search or seizure, the reasonableness in *McGowan* depended on the facts and circumstances of the case. (*Cady v. Dombrowski* (1973), 413 U.S. 433, 440, 37 L. Ed. 2d 706, 714, 93 S. Ct. 2523, 2527.) To be reasonable, the officer's inferences must be

based on more substantial facts than would support a mere hunch. In order for the police to justify a temporary detention and frisk for weapons, they must point to specific articulable facts which, when taken together with natural inferences, make the intrusion reasonable. (*People v. McGowan* (1977), 69 Ill. 2d 73, 78.) We acknowledged that *McGowan* was a close case. There had been no report of criminal activity in the area, the defendant had not acted suspiciously, and no one had associated the defendant with any crime.

Comparing *McGowan* to the case at bar, we must conclude that the facts here are not really close. There are sufficient articulable facts to create a reasonable belief in the minds of the police officers that an offense had been, or was about to be, committed, that the officers, or some other person in or near the tavern, were in danger of being harmed, and that the defendant was involved.

It has been suggested that there are six primary variables which, alone or in combination, are increasingly relied upon in determining the validity of a *Terry*-type stop: appearance, conduct, criminal record, environment, police purpose and source of information. (Comment, *Terry Revisited: Critical Update On Recent Stop-And-Frisk Developments,* 1977 Wis. L. Rev. 877, 886.) The facts of a case do not always lend themselves to such precise categorization. However, our case, as shown below, contains a substantial number of the elements the author of the comment, after analyzing current case law, deems essential.

Although the record does not disclose the source of the call for police assistance, the officers, when they went to the tavern, had been dispatched as a result of information received by the police that there was "a man with a gun" at the tavern. An unidentified call of this nature may be insufficient to establish probable cause to justify an arrest; however, it certainly was sufficient to authorize

and, indeed, require, a police officer to investigate the activities in the tavern. This call, coupled with the other facts present, was sufficient to authorize an investigatory stop both under *Terry* (see *Adams v. Williams* (1972), 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921) and under the provisions of section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 107—14), and to authorize a search for weapons under section 108—1.01 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108—1.01).

Having been alerted to the possible presence of a man with a gun and the possibility of criminal activity, the officers, in evaluating the potential danger at the tavern, could properly consider that, by 3 or 4 o'clock in the morning, the patrons in the tavern had probably consumed a considerable amount of liquor, and that the loud noises emanating from the tavern were not just robust discussions, but instead could reasonably be inferred to involve some sort of a disagreement bordering on violence. The entire environment would reasonably alert a trained police officer to the possibility of danger. Such an officer would be aware, at least in a general way, of statistics which show the high potential for violence and danger to themselves and others under these circumstances. (In 1979 over 50% of the assaults on officers occurred between 12 midnight and 6 a.m., and one-third of the assaults on officers occurred while responding to disturbance calls. This is a far greater percentage than in any other type of activity officers are engaged in when an assault occurs. Department of Law Enforcement, Division of Support Services, Bureau of Identification, Crime in Illinois 1979, sec. V, at 169, table 47.)

In appraising the reasonableness of the stop and frisk, one must also consider the purpose or motive of the officers. Since reasonableness involves a balancing of the need to search against the invasion which the search entails,

the quantum of evidence necessary to justify a "reasonable suspicion" to support a stop and frisk should decrease as the need for the search increases. (See Comment, *Terry Revisited: Critical Update On Recent Stop-And-Frisk Developments,* 1977 Wis. L. Rev. 877, 891.) In other words, the articulable facts necessary to justify a stop-and-frisk requirement should decrease as the seriousness of the offense or the danger involved increases.

The fact that the officers had information that the complaint they were investigating involved a man with a gun casts a heavy weight in favor of the reasonableness of the search. The late hour, the fact that there was a disturbance in the tavern, and the boisterous conduct all buttress the reasonableness of the belief that a stop and a frisk were authorized. We thus have the general requirements necessary, under *Terry* and the sections of our code cited, to authorize an officer to conduct the search in question. We must, however, evaluate the reasonableness of the officer's conduct as it relates to this particular defendant.

As stated earlier in this opinion, when Officer Meisener entered the tavern, he noticed the defendant walking toward him. When the defendant was 10 to 15 feet away from the officer, the defendant turned and began walking toward the rear exit. This attempt to evade the officer, coupled with the other circumstances, was sufficient to center suspicion on the defendant. (See *United States v. Hall* (D.C. Cir. 1976), 525 F.2d 857; 3 W. LaFave, Search And Seizure sec. 9.3, at 93 (1978).) Also, Officer Meisener stated that he then asked the bartender if the defendant was involved in the disturbance and the bartender answered, "Yes." The bartender, however, stated that not he, but one of the other patrons, identified the defendant as being involved in the disturbance by saying "there he goes out the back door." Regardless of these inconsis-

tencies, the fact remains that the officer's attention was brought to focus on the defendant by someone in the tavern as the person involved in the disturbance which prompted the call for police help. When all the articulable facts are considered together, they clearly indicate that Officer Meisener had reasonable grounds to believe the defendant to be the person about whom the "man with a gun" call was made, and then to detain him and search him for weapons.

We should evaluate the officers' actions in light of one's reaction had they failed to act. When an officer could be disciplined for failure to act, his action can hardly be characterized as unreasonable. (*People v. Moore* (1966), 35 Ill. 2d 399, 403.) Although we need not determine whether such a failure in this case would warrant discipline, the facts are such that it would have been poor police work, indeed, for the officers not to have searched the defendant for weapons. (See *In re H.B.* (1977), 75 N.J. 243, 381 A.2d 759.) A "man with a gun" call should be sufficient to alert an officer to a potentially dangerous situation. The circumstances existing at the tavern when the officers arrived confirmed, partially at least, the validity of the call, and the officer's attention was focused upon the defendant as being involved in the disturbance. Had the officer not conducted the stop and frisk, someone could well have been killed or seriously injured. In determining the reasonableness of the officers' conduct, the facts must be considered not from the perspective of analytical hindsight, but rather as they would have been viewed by a reasonable officer confronting them in the performance of his duties. See *People v. Clay* (1973), 55 Ill. 2d 501, 505.

For the reasons stated herein, we find that the order of the circuit court of Peoria County suppressing the evidence is against the manifest weight of the evidence (see *People*

440

*v. Williams* (1974), 57 Ill. 2d 239, 246; *People v. Brooks* (1972), 51 Ill. 2d 156, 165); and that order, as well as the judgment of the appellate court, is reversed.

*Reversed and remanded.*