(No. 82606.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MELVIN FLOWERS, Appellant.

*Opinion filed November 20, 1997.*

Daniel D. Yuhas, Deputy Defender, and Gary R. Peterson, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield, and Michael D. Clary, State's Attorney, of Danville (Barbara A. Preiner, Solicitor General, and William L. Browers and Lisa Anne Hoffman, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Melvin Flowers, was charged in the circuit court of Vermilion County with one count of possession of a controlled substance. 720 ILCS 570/402(c) (West 1994). The circuit court granted defendant's motion to suppress evidence that was seized from him during a police "stop and frisk." The circuit court ruled that the frisk was illegal because the officer did not have a reasonable belief that defendant was armed and dangerous. The State appealed to the appellate court and the appellate court reversed the suppression order. No. 4—95—0893 (unpublished order under Supreme Court Rule 23). We granted defendant's petition for leave to appeal (155 Ill. 2d R. 315), and we now reverse the appellate court.

## FACTS

The only witness to testify at the suppression hear-

ing was Officer Stephen Wilson of the Danville police department. Officer Wilson testified that the police department had received a telephone call at 1:22 a.m. on July 12, 1995, from an anonymous caller who reported seeing a black male wearing a white T-shirt and riding a bicycle go to the rear of a house for sale on the 500 block of Woodbury. The caller reported hearing what sounded like glass breaking at that time. Officer Wilson, along with two fellow officers, responded to the report. Officer Wilson testified that there were two houses that had "for sale" signs on the 500 block of Woodbury. They checked both houses for signs of damage or illegal entry and found them to be secure. They saw no broken windows in either house.

At 1:39 a.m., Officer Wilson was still on the 500 block of Woodbury when he saw defendant, a black male, riding a bicycle. Officer Wilson activated the police lights on his car and effectuated a stop of defendant because defendant matched the description given by the earlier caller. Shortly after he stopped defendant, Officer Wilson was joined by a fellow officer. Officer Wilson asked defendant if he had been in the area earlier and defendant responded that he had been. In response to further questions, defendant stated that he had been at his girlfriend's house and was now returning to his home. Defendant gave the officer his address and that of his girlfriend. Defendant had a bag on the front of his bicycle. Officer Wilson asked defendant what was in the bag and defendant told him it contained clothing. Defendant gave the officer consent to search the bag. The search revealed that the bag contained clothing. Officer Wilson then "patted [defendant] down for weapons." Officer Wilson asked defendant "what he had on his person." In response, defendant took some items, including nail files and a piece of tissue paper, out of his pockets and showed them to the officer. Defendant was straddling his bicycle during the frisk.

Officer Wilson testified that he felt a "tube-like item" in defendant's pocket, which he believed to be a crack pipe. He asked defendant if it was a crack pipe and defendant responded that it was. Officer Wilson then continued the frisk which revealed a plastic bag containing a small amount of a substance the officer believed to be cocaine.

Officer Wilson testified that he frisked defendant "for my safety as well as his." However, when asked whether he had any particular reason to believe that defendant had a weapon, Officer Wilson responded: "No. I do that as a common thing in my job, to pat people down for my safety as well as theirs."

At the conclusion of the suppression hearing, the trial court ruled that the stop of defendant was valid under section 107—14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/107—14 (West 1994)) and *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The trial court found, however, that the frisk was invalid under section 108—1.01 of the Code and *Terry*. The trial court therefore granted defendant's motion to suppress the evidence obtained as a result of the frisk. The State filed a certificate of impairment and appealed to the appellate court.

The appellate court reversed the suppression order, finding that the frisk was valid. No. 4—95—0893 (unpublished order under Supreme Court Rule 23). The appellate court noted that Officer Wilson was investigating a "possible burglary" and that defendant "fit the description of the suspect." The court also noted that the officer had testified that he routinely frisked suspects for his safety and the safety of the suspects. The court then reasoned that, "in this society," Officer Wilson's "caution" was warranted.

## ANALYSIS
The sole issue presented in this appeal is the valid-

ity of Officer Wilson's frisk of defendant. The trial court determined that the frisk was invalid and that the evidence obtained as a result must be suppressed. We find that the trial court's ruling was not manifestly erroneous and must therefore be upheld.

The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Reasonableness under the fourth amendment generally requires a warrant supported by probable cause. *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514 (1967); *People v. Bailey*, 159 Ill. 2d 498, 503 (1994); *People v. Galvin*, 127 Ill. 2d 153, 169 (1989). A limited exception to the traditional requirement was recognized by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). In *Terry*, the Court held that a police officer, under appropriate circumstances, could briefly detain a person for investigatory purposes and, if necessary for safety, conduct a limited protective search for weapons. *People v. Scott*, 148 Ill. 2d 479, 502 (1992); *People v. Smithers*, 83 Ill. 2d 430, 434 (1980). Under the *Terry* exception, a police officer may briefly stop a person for temporary questioning if the officer reasonably believes that the person has committed, or is about to commit, a crime. *Terry*, 392 U.S. at 22, 20 L. Ed. 2d at 906-07, 88 S. Ct. at 1880; *Smithers*, 83 Ill. 2d at 434. If the officer reasonably believes that the person stopped is armed and dangerous, the officer may subject the person to a limited search for weapons, commonly referred to as a "frisk." *Terry*, 392 U.S. at 24, 20 L. Ed. 2d at 908, 88 S. Ct. at 1881; *Smithers*, 83 Ill. 2d at 434.

The *Terry* standards have been codified in our Code of Criminal Procedure. Section 107—14 of the Code provides, in pertinent part:

"Temporary Questioning without Arrest. A peace officer *** may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense *** and may demand the name and address of the person and an explanation of his actions." 725 ILCS 5/107—14 (West 1994).

Section 108—1.01 of the Code provides:

"Search During Temporary Questioning. When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons." 725 ILCS 5/108—1.01 (West 1994).

Defendant does not challenge the propriety of Officer Wilson's stopping him for questioning. We therefore make no comment on the validity of the stop. Defendant challenges the legality of Officer Wilson's frisk of defendant's person. Whether an investigatory stop is valid is a separate question from whether a search for weapons is valid. *Galvin*, 127 Ill. 2d at 163. The fact that an officer has reason to stop a person does not automatically justify the further intrusion of a search for weapons. *Galvin*, 127 Ill. 2d at 165; *Smithers*, 83 Ill. 2d at 434. Rather, in order to validly conduct a weapons frisk under *Terry* and section 108—1.01, the officer must have reason to believe that "the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Terry*, 392 U.S. at 24, 20 L. Ed. 2d at 908, 88 S. Ct. at 1881; see also *Smithers*, 83 Ill. 2d at 434. The sole justification for the search allowed by the *Terry* exception is the protection of the police officer and others in the vicinity, not to gather evidence. *Minnesota v. Dickerson*, 508 U.S. 366, 373, 124 L. Ed. 2d 334, 344, 113 S. Ct. 2130, 2136 (1993); *Galvin*, 127 Ill. 2d at 170. The scope of the search is therefore strictly limited to a search for weapons. *Galvin*, 127 Ill. 2d at 170.

The validity of a frisk conducted during a valid investigatory stop is assessed by an objective standard. *Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880; *People v. Long*, 99 Ill. 2d 219, 228 (1983). The question is whether a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883. The officer conducting the frisk must be able to point to specific, articulable facts which, when taken together with natural inferences, reasonably warrant the intrusion. *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880; *Scott*, 148 Ill. 2d at 503. These facts need not meet probable cause standards, but must constitute more than a mere hunch. *Scott*, 148 Ill. 2d at 503. Although the standard is an objective one, the officer's subjective belief regarding the safety of the situation is one of the factors that may be considered in determining whether a weapons frisk was valid under *Terry*. *Galvin*, 127 Ill. 2d at 168.

In this case, the circuit court heard the evidence presented at the suppression hearing and ruled that the frisk of defendant was invalid because there was "no indication whatsoever" that defendant presented a danger to the officers. A trial court's ruling on a motion to suppress will not be overturned unless it is manifestly erroneous. *Galvin*, 127 Ill. 2d at 162. The record in this case amply supports the trial court's ruling. The State does not dispute that the only possible justification for searching defendant in this case is the *Terry* exception. The evidence presented at the suppression hearing, however, failed to establish any facts which would support a reasonable belief that defendant was armed and dangerous.

First, Officer Wilson expressly testified that he had no reason to believe that defendant had a weapon. Although the officer's subjective belief is not dispositive of

the validity of the frisk, it is probative of that determination. *Galvin*, 127 Ill. 2d at 168. This is particularly true where, as here, the officer candidly admits that he had no reason to believe that the defendant was armed.

Officer Wilson's subjective assessment aside, there were no objective circumstances which would support a reasonable belief that defendant was armed and dangerous. Officer Wilson testified that he was responding to a report, by an anonymous caller, of a possible burglary or break-in of a residence. The caller's only basis for believing a burglary had taken place was hearing what sounded like glass breaking. When the officers investigated, however, they found that the residences in question were secure and observed no broken windows. Defendant was not observed by the officers until approximately 15 minutes later. Thus, at the time defendant was stopped, Officer Wilson and the other officers had already investigated and found no evidence that the possible crime reported by the anonymous caller had been committed or attempted.

Further, there was no evidence that defendant attempted to avoid Officer Wilson when he approached or engaged in any other evasive or suspicious behavior. To the contrary, defendant was completely cooperative with the police officers. Defendant provided the officers with the information they requested, including a plausible explanation for why he was in the area. Defendant answered truthfully when asked about the contents of his bag and gave the officer consent to search the bag. The contents of the bag—clothing—revealed no evidence of any criminal activity on defendant's part. Defendant even showed Officer Wilson the contents of his pockets in response to the officer's questioning. Moreover, Officer Wilson was not alone when he frisked defendant but was joined by another officer shortly after he stopped defendant. Under these circumstances, the trial court

was correct in concluding that there was no indication that defendant presented a threat to the officers' safety. There was therefore no justification for frisking defendant.

Most problematic about the frisk in this case is Officer Wilson's asserted reason for frisking defendant. Officer Wilson's testimony indicated that he frisked defendant, not because of any particularized suspicion that defendant was armed, but simply because it was his routine to frisk persons stopped for investigatory questioning. The appellate court found that Officer Wilson's routine of frisking detainees for "safety" reasons validated the frisk of defendant. Both Officer Wilson's testimony and the appellate court's acceptance of that testimony reflect a misapprehension of the scope and purpose of the *Terry* exception. First, the officer's testimony reveals an erroneous belief that a weapons frisk is always appropriate following an investigatory stop. This court has repeatedly recognized that the right to frisk does not automatically follow from a valid stop. *Galvin*, 127 Ill. 2d at 165; *Smithers*, 83 Ill. 2d at 434. A weapons frisk is valid only when the officer has reason to believe that a particular individual is armed and dangerous. *Terry*, 392 U.S. at 24, 20 L. Ed. 2d at 908, 88 S. Ct. at 1881; *Galvin*, 127 Ill. 2d at 165.

More importantly, the officer's testimony reveals a misapprehension of the narrow scope of the *Terry* exception. The Supreme Court has repeatedly emphasized that the "stop and frisk" allowed by *Terry* is an *exception* to the general probable cause requirement and, as such, must be narrowly applied. See *Florida v. Royer*, 460 U.S. 491, 499, 75 L. Ed. 2d 229, 237, 103 S. Ct. 1319, 1325 (1983); *Ybarra v. Illinois*, 444 U.S. 85, 93, 62 L. Ed. 2d 238, 247, 100 S. Ct. 338, 343 (1979); *Dunaway v. New York*, 442 U.S. 200, 210, 60 L. Ed. 2d 824, 834, 99 S. Ct. 2248, 2255 (1979). The reason for narrowly circumscrib-

ing the power of the police to conduct these types of searches was clearly articulated in *Terry*. The Court there noted that "[e]ven a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." *Terry*, 392 U.S. at 24-25, 20 L. Ed. 2d at 908, 88 S. Ct. at 1881-82. The Court also recognized, however, that it could not blind itself to the need for police officers to protect themselves while investigating suspicious activity. The Court in *Terry* therefore struck a balance between the individual's "cherished" right to be free from an invasion of personal security and law enforcement officers' need to protect themselves by allowing a "narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer." *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883. The limited exception recognized in *Terry* thus clearly does not permit police officers to engage in a practice of routinely frisking individuals, without concern for whether a particular person poses a danger. Here, Officer Wilson's testimony indicated that he conducts no individualized consideration of whether any particular suspect is armed, but simply applies a general rule that all persons he stops on suspicion of criminal activity should be frisked for "safety" reasons. Such a generalized approach to the power to frisk granted by *Terry* is improper. See *Ybarra*, 444 U.S. at 94, 62 L. Ed. 2d at 247, 100 S. Ct. at 343 ("[t]he 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion *directed at the person to be frisked*" (emphasis added)).

This court's decision in *People v. Galvin*, 127 Ill. 2d 153 (1989), supports our holding here. In *Galvin*, the trial court granted the defendant's motion to suppress evidence obtained during a weapons frisk. The police of-

ficer who conducted the frisk testified at the suppression hearing that he had been participating in a police surveillance on September 14, 1986, in a residential area where a number of burglaries had recently taken place. The officer had been given some information about possible suspects in the burglaries. On the night of one of the prior burglaries, an anonymous witness had observed a black male, who appeared to be hiding something under his jacket, walk from an alley and get into a brown Oldsmobile in which another black male was waiting. The witness wrote down the license plate number of the car and gave it to a neighbor who passed it on to the police. During the police surveillance on September 14, the testifying officer observed the defendant slowly driving a brown Oldsmobile with that license plate number through the area. The defendant and another man, both of whom were black, exited the vehicle and walked into the backyard of an unlighted house. They were not seen again until 40 minutes later, when they returned to the car. The officer had run a license plate search and discovered that the car belonged to the defendant, who, the officer knew, had previously been arrested for burglary and theft. Another officer saw one of the men put an unknown object into his pocket. The officers continued to observe the men as they drove the Oldsmobile around the area, stopping in several locations. The officers followed the men for approximately two to three miles as they drove out of the area and, joined by two other police cars, effectuated a stop of the defendant's vehicle. A total of five officers were present at the scene of the stop. The defendant had exited the car and was cooperating with the officers when the testifying officer frisked the defendant. The frisk revealed a rifle ammunition magazine with live ammunition in the defendant's pocket. The officer who conducted the frisk testified that he did not believe that

the defendant was armed or dangerous. The trial court granted the defendant's motion to suppress the evidence obtained as a result of the frisk.

This court upheld the suppression of the evidence in *Galvin*. The court found that the investigatory stop of the defendant was valid under *Terry* and section 107—14 of the Code. The frisk, however, was found to be invalid. The *Galvin* court considered all the circumstances surrounding the frisk, noting in particular that multiple, armed officers were present at the scene, the defendant was cooperative and the officer who conducted the frisk did not believe that the defendant was armed. The court found that, under these circumstances, the trial court was not manifestly erroneous in determining that there were no facts which would support a reasonable belief that the defendant presented a threat to the officers' safety. *Galvin*, 127 Ill. 2d at 169. Notably, the *Galvin* court rejected the contention that the frisk was valid simply because the officer responded affirmatively when asked by the prosecution whether he conducted the frisk to "protect [his] own safety." The court noted that the officer never pointed to any specific facts which made it reasonable to believe that his safety was in danger. *Galvin*, 127 Ill. 2d at 168-69.

In this case, there is even less evidence that defendant was armed and dangerous than there was in *Galvin*. Here, defendant was simply riding a bicycle on a public street when he was stopped by the police. The officers did not observe defendant engage in any suspicious behavior whatsoever and their investigation had already revealed that the possible crime reported by the anonymous caller had not occurred.

The State contends that reasonable justification existed for the search because defendant was a "possible burglary suspect." This position is not persuasive. First, as noted above, by the time Officer Wilson stopped de-

fendant, he and his fellow officers had already investigated the report and found no evidence that a burglary had been committed or attempted. There is thus no basis in the record for characterizing defendant, at that point, as a possible burglary suspect. Moreover, even if defendant could properly be characterized as a possible burglary suspect at the time he was stopped, the State's reliance on this factor alone is contradictory to this court's holding in *Galvin*. In *Galvin*, this court specifically rejected the State's argument that a frisk for weapons is justified every time a burglary suspect is stopped. The court declined to adopt a legal presumption that every burglary suspect is armed and dangerous, so as to justify a search for weapons under the *Terry* exception. Rather, the *Galvin* court emphasized that the reasonableness of every search must be judged by the particular facts and circumstances surrounding it. *Galvin*, 127 Ill. 2d at 173. As noted, in *Galvin*, this court upheld the ruling that the frisk was invalid even though the individual frisked was a burglary suspect.

In sum, the record in this case provides no basis for overturning the trial court's ruling granting defendant's motion to suppress. Officer Wilson testified that he had no reason to believe that defendant was armed and dangerous and there were no objective facts which indicated that defendant was armed and dangerous. The trial court's ruling was not manifestly erroneous. The appellate court's judgment reversing the trial court is therefore reversed and the circuit court order is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*