(No. 90216.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. BRUCE THOMAS, Appellant.

*Opinion filed September 20, 2001.—Rehearing denied*
*December 3, 2001.*

Daniel M. Kirwan, Deputy Defender, and Robert S. Burke, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellant.

James E. Ryan, Attorney General, of Springfield, and Gary Duncan, State's Attorney, of Mt. Vernon (Joel D. Bertocchi, Solicitor General, and William L. Browers and Lisa Anne Hoffman, Assistant Attorneys General, of Chicago, of counsel), and Iain D. Pedden, law student, for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Bruce Thomas, was charged in the circuit court of Jefferson County with one count of possession of a controlled substance with the intent to deliver. 720

ILCS 570/401(c)(2) (West 1998). Defendant moved to suppress evidence of purported cocaine that police seized from him during a "pat-down" search. The circuit court granted the motion. The State appealed to the appellate court, which reversed the suppression order. 315 Ill. App. 3d 849. We allowed defendant's petition for leave to appeal (177 Ill. 2d R. 315(a)), and now affirm the appellate court.

## BACKGROUND

The following evidence was adduced at the suppression hearing. At approximately 11:30 p.m. on June 20, 1998, defendant was riding his bicycle on Tenth Street near Bell or Herbert Avenue in Mt. Vernon. He rode past Mt. Vernon police officer Farrin Melton, who was completing the issuance of a traffic ticket. Officer Melton noticed that defendant was holding a police scanner that permits a listener to monitor police radio transmissions.

Officer Melton had previously arrested defendant for drug offenses. Officer Melton had recently learned of defendant's release from prison. Also, Melton had heard of a confidential informant's tip that defendant was using his bicycle to deliver illegal drugs, most often in the evening.

Based on this knowledge and defendant's possession of a police scanner, Officer Melton drove after defendant to speak with him "about his activities." Upon finding defendant, Officer Melton radioed Officer Steven Burtnett and announced his intention to stop defendant and conduct a "field interview." Defendant heard the communication on the police scanner. Officer Melton overtook and passed defendant; he did not activate his emergency lights or instruct defendant to stop. Officer Melton positioned his squad car across defendant's path. Defendant abruptly turned into an alleyway and departed the area at an accelerated pace. Since Officer Melton was still behind the wheel of his car, he had no opportunity to verbally compel a stop.

At that point, Officer Burtnett was following Officer Melton and saw defendant's evasion. He was first to pursue defendant down the alley. Officer Burtnett overtook defendant, pulled his squad car alongside, lowered a window and directed defendant to stop. Defendant asked Officer Burtnett what he wanted. Before Officer Burtnett could answer, defendant changed direction and accelerated.

Officer Burtnett activated his emergency lights and, joined by Officer Melton, gave chase. Defendant eventually abandoned his bicycle and fled into a field. Officer Melton exited his squad car and pursued defendant on foot. The officer announced his office and ordered defendant to stop. Defendant became tangled in high grass, enabling Officer Melton to capture and arrest him for obstructing a police officer. Officer Melton conducted a "pat-down" search to determine if defendant was carrying a weapon. He recovered from defendant's pants pocket what appeared to be three rocks of crack cocaine. Officer Melton conceded that it was not illegal for defendant to possess a police scanner and admitted that he had no information that defendant was carrying illegal drugs on the night in question.

Defendant was initially charged with obstructing a police officer and possession of a controlled substance with intent to deliver. He was eventually indicted on one count of possession of a controlled substance with intent to deliver. See 720 ILCS 570/401(c)(2) (West 1998). Defendant moved to suppress the purported cocaine that Officer Melton recovered from defendant's pants pocket and bar its use as evidence. Defendant argued that he was not violating any laws when he was detained.

At the conclusion of the hearing, the circuit court granted defendant's motion to suppress. The appellate court reversed the circuit's court suppression order. The court held that defendant's flight corrected Officer Mel-

ton's ungrounded suspicion, upon which he based his initial, unwarranted attempt to stop defendant. 315 Ill. App. 3d at 858. Defendant appeals.

## DISCUSSION

Generally, a trial court's decision on a motion to suppress evidence is subject to reversal only if it is clearly or manifestly erroneous. *People v. Foskey*, 136 Ill. 2d 66, 76 (1990). This test is based on the understanding that suppression motions usually raise mixed questions of law and fact: a court first weighs the evidence and determines the facts surrounding the complained-of conduct, after which it decides whether, as a matter of law, these facts constitute an unconstitutional seizure. *People v. Shapiro*, 177 Ill. 2d 519, 524 (1997). However, where, as here, neither the facts nor the credibility of the witnesses is contested, the determination of whether there is reasonable suspicion warranting an investigatory stop is a legal question which a reviewing court may consider *de novo*. See *Foskey*, 136 Ill. 2d at 76.

The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. This provision applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 614, 95 S. Ct. 2574, 2578 (1975); *People v. Smithers*, 83 Ill. 2d 430, 433-34 (1980). Reasonableness under the fourth amendment generally requires a warrant supported by probable cause. *People v. Flowers*, 179 Ill. 2d 257, 262 (1997); *People v. Long*, 99 Ill. 2d 219, 227 (1983).

However, in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), the United States Supreme Court recognized a limited exception to the traditional probable cause requirement. In *Terry*, the Court held

that a police officer, under appropriate circumstances, could briefly detain a person for investigatory purposes. Under the *Terry* exception, a police officer may briefly stop a person for temporary questioning if the officer reasonably believes that the person has committed, or is about to commit, a crime. *Terry*, 392 U.S. at 22, 20 L. Ed. 2d at 906-07, 88 S. Ct. at 1880; *Flowers*, 179 Ill. 2d at 262; *Smithers*, 83 Ill. 2d at 434.

Whether an investigatory stop is valid is a separate question from whether a search for weapons is valid. *Flowers*, 179 Ill. 2d at 263. The conduct constituting the stop under *Terry* must have been justified at its inception. A court objectively considers whether, based on the facts available to the police officer, the police action was appropriate. To justify the intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences therefrom, reasonably warrant that intrusion. *Terry*, 392 U.S. at 20-21, 20 L. Ed. 2d at 905-06, 88 S. Ct. at 1879-80; *Long*, 99 Ill. 2d at 227-28.

The *Terry* standards have been codified in our Code of Criminal Procedure of 1963. *Flowers*, 179 Ill. 2d at 262; *Long*, 99 Ill. 2d at 228. Section 107—14 of the Code provides, in pertinent part: "A peace officer *** may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense ***." 725 ILCS 5/107—14 (West 1998). The same standard is applied in determining the propriety of an investigatory stop under article I, section 6, of the 1970 Illinois Constitution (Ill. Const. 1970, art. I, § 6). See *People v. Tisler*, 103 Ill. 2d 226, 241-45 (1984) (the protection against unreasonable searches and seizures under the Illinois Constitution is measured by the same standards as are used in defining the protections contained in the fourth amendment to the United States Constitution).

In interpreting the above principles, this court has further defined the reasonableness standard for police conduct in the context of a *Terry* stop. Viewed as a whole, the situation confronting the police officer must be so far from the ordinary that any competent officer would be expected to act quickly. The facts supporting the officer's suspicions need not meet probable cause requirements, but they must justify more than a mere hunch. The facts should not be viewed with analytical hindsight, but instead should be considered from the perspective of a reasonable officer at the time that the situation confronted him or her. *Long*, 99 Ill. 2d at 228-29 (and cases cited therein).

Defendant's sole contention is that Officer Melton effected the investigatory stop without having the requisite degree of suspicion to support it. We agree with the appellate court that Officer Melton's initial conduct constituted an unwarranted investigatory stop and was constitutionally impermissible. Before the appellate court, the State argued that Officer Melton decided to effect an investigatory stop only after defendant fled. The appellate court properly rejected that argument. The court concluded that, prior to defendant's flight, Officer Melton "was trying to effect a forceful stop and detention. His use of the phrase 'field interview' to describe his intent and design does not alter what he did in order to effect it. Nor does it change the investigative nature of that intent and design." 315 Ill. App. 3d at 853. We agree with the appellate court that Officer Melton wanted to stop, detain, and interrogate defendant based on a suspicion grounded in circumstances that fell short of warranting a stop. Further, Officer Melton's actions constituted a show of authority. 315 Ill. App. 3d at 854.

However, we "must determine at what point in time the defendant here was 'seized' within the meaning of the fourth amendment and, more specifically, *Terry v.*

*Ohio." Long*, 99 Ill. 2d at 229. For if there was no seizure, then the fourth amendment was not implicated at that point. See *Florida v. Royer*, 460 U.S. 491, 497-98, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324 (1983) (opinion of White, J., joined by Marshall, Powell and Stevens, JJ.); *United States v. Mendenhall*, 446 U.S. 544, 552-53, 64 L. Ed. 2d 497, 508, 100 S. Ct. 1870, 1876 (1980) (opinion of Stewart, J., joined by Rehnquist, J.); *People v. Clark*, 185 Ill. App. 3d 231, 236 (1989).

The purpose of the fourth amendment is not to eliminate all contact between the police and citizens. As long as the person being questioned remains free to disregard the questions and walk away, there is no intrusion upon that person's liberty or privacy that would require some particularized and objective justification. *Mendenhall*, 446 U.S. at 553-54, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. A person has been seized within the meaning of the fourth amendment only when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. *Michigan v. Chesternut*, 486 U.S. 567, 573-74, 100 L. Ed. 2d 565, 572, 108 S. Ct. 1975, 1979 (1988); *Royer*, 460 U.S. at 501-02, 75 L. Ed. 2d at 239, 103 S. Ct. at 1326; *Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. This test states a necessary, but not a sufficient, condition for seizure. *California v. Hodari D.*, 499 U.S. 621, 628, 113 L. Ed. 2d 690, 698, 111 S. Ct. 1547, 1551 (1991).

This oft-stated test, sometimes referred to as the *Mendenhall* test, was examined in *Hodari D.* There, the Court described the issue as follows: "The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not." *Hodari D.*, 499 U.S. at 626, 113 L. Ed. 2d at 697, 111 S. Ct. at 1550. The Court reasoned as follows:

"The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. \*\*\* It does not remotely apply, however, to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure. \*\*\* An arrest requires *either* physical force \*\*\* *or*, where that is absent, *submission* to the assertion of authority." (Emphases in original.) *Hodari D.*, 499 U.S. at 626, 113 L. Ed. 2d at 697, 111 S. Ct. at 1550-51.

The Court concluded that the fleeing Hodari was not seized until a police officer tackled him. *Hodari D.*, 499 U.S. at 629, 113 L. Ed. 2d at 699, 111 S. Ct. at 1552.

In the present case, after discussing *Hodari D.*, the appellate court reasoned:

"A necessary show of authority under the *Mendenhall* test does not end the inquiry into whether a fourth amendment seizure has occurred. *The police may well convey a reasonable feeling of restraint, but that message does not amount to a seizure within the meaning of the fourth amendment until there is submission to it. A person must submit to a show of authority before that show of authority can constitute a seizure.* Here, the defendant was not seized by Officer Melton's attempted roadblock because he refused to halt and, instead, chose to run. He was seized only when physical force was applied after he was caught.

Had the defendant stopped when his path was obstructed, had he submitted to Officer Melton's show of authority, a seizure of the kind offensive to our constitution would have occurred. Officer Melton would have effected an investigatory stop absent the requisite degree of suspicion to support it. The stop would have constituted an unreasonable seizure of the defendant's person. However, Officer Melton's attempt to effect an unlawful stop did not implicate the fourth amendment because the defendant took flight and prevented it." (Emphasis in original.) 315 Ill. App. 3d at 857.

We agree and so hold.

The appellate court next held that, based on defendant's flight, defendant's ultimate stop and detention

through the application of physical force was not an unreasonable seizure of his person, despite Officer Melton's unsuccessful, yet unlawful, initiative. 315 Ill. App. 3d at 857. Unprovoked flight in the face of a potential encounter with police may raise enough suspicion to justify the ensuing pursuit and investigatory stop. *Illinois v. Wardlow*, 528 U.S. 119, 124-25, 145 L. Ed. 2d 570, 576-77, 120 S. Ct. 673, 676-77 (2000).

The appellate court concluded that defendant's flight, induced by Officer Melton's effort to effect an unwarranted investigatory stop, turned Officer Melton's otherwise ungrounded suspicion into a suspicion that justified defendant's ultimate stop and detention. The court further concluded that defendant's flight to prevent the impending illegal stop and detention cured the constitutionally impermissible conduct that provoked the flight. 315 Ill. App. 3d at 857. As the Court in *Hodari D.* observed: "Street pursuits always place the public at some risk, and compliance with police orders to stop should therefore be encouraged. *** Unlawful orders will not be deterred, moreover, by sanctioning through the exclusionary rule those of them that are *not* obeyed." (Emphasis in original.) *Hodari D.*, 499 U.S. at 627, 113 L. Ed. 2d at 698, 111 S. Ct. at 1551.

We agree with the appellate court's view of the case with respect to the investigatory stop:

"We choose to examine Officer Melton's basis for a seizure of the defendant's person at that point in time when he was successful in effecting it. By that time, Officer Melton's ungrounded suspicion had ripened into suspicion that fully warranted an investigatory stop. The defendant's history, his possession of a police scanner, and the informant's tip was information that grew more credible with each evasive turn that the defendant took in his effort to outrun two squad cars. The defendant's desire to avoid an encounter with the police was so great that he was willing to place the public's safety, as well as his own safety, at risk. He was even willing to abandon his bicycle

and police scanner in the hope of escaping. The defendant's response to Officer Melton's unsuccessful effort escalated into headlong flight, a consummate act of evasion. It credited other information that Officer Melton possessed and gave rise to an articulable suspicion that criminal activity was afoot. Therefore, the defendant's ultimate stop and detention was legal and proper. ***
***

There are two circumstances key to today's decision. First, Officer Melton did not act without reason or for the sole purpose of provoking the defendant's flight. He acted on information that he believed warranted further investigation. *** Second, the defendant's response to his endeavor was nothing short of headlong flight. The defendant's reaction was in no way ambiguous. There was nothing to suggest that the defendant was merely exercising the right to continue on his way or to cause confusion between the exercise of that right and a pure act of evasion." 315 Ill. App. 3d at 858-59.

Accord *People v. Holdman*, 73 Ill. 2d 213, 220-21 (1978) (defendants' flight, following police officers' shining bright light into vehicle they reasonably believed to be associated with fugitive for whom they had warrant, indicated criminal activity requiring police pursuit); see also *People v. Ramirez*, 312 Ill. App. 3d 1 (2000).

We agree with the appellate court that this holding is not a license to conduct investigatory stops in every case where a citizen ignores, or fails to heed, a baseless police order or show of authority. "[P]eople do have a right to go about their business, and if they choose to do so, their choice does not authorize a subsequent stop and detention." 315 Ill. App. 3d at 858, citing *Royer*, 460 U.S. at 497-98, 75 L. Ed. 2d at 236, 103 S. Ct. at 1324.

We lastly note defendant's argument that the United States Supreme Court "weakened" the constitutional right of privacy in *Wardlow*, and that this court should interpret the Illinois Constitution as affording greater protection. We decline defendant's invitation. See *People v. Mitchell*, 165 Ill. 2d 211, 217-21 (1995).

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court, which reversed the suppression order of the circuit court of Jefferson County and remanded for further proceedings, is affirmed.

*Affirmed.*