# Illinois Official Reports

## Appellate Court

---

### *People v. Porter*, 2014 IL App (3d) 120338

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. OMAR PORTER, Defendant-Appellant. |
| | |
| District & No. | Third District<br>Docket No. 3-12-0338 |
| | |
| Filed<br>Modified upon<br>denial of rehearing | January 13, 2014<br><br>February 28, 2014 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for armed violence was reversed and his 20-year sentence was vacated on the ground that the trial court erred in denying his motion to quash his arrest and suppress the firearm that fell from his belt during a struggle with an officer, notwithstanding the testimony that police officers, responding to a report of a home invasion in the early morning, saw defendant walking in the area, he matched the description given by the victim of the home invasion, and when defendant was later encountered at a nearby convenience store, he initially followed directions to go outside, but when an officer grabbed his wrist and conducted a patdown search for weapons, defendant attempted to run and a firearm fell out of his belt, since defendant was not given a chance to answer any questions, the officer who conducted the patdown offered no reasons that would lead a reasonable person to believe that his safety was in danger, the victim did not mention any weapon, and defendant did not try to flee until he was grabbed and the patdown started, and without the evidence that should have been suppressed, defendant's guilt could not be proved. |
| | |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 10-CF-1024; the Hon. Timothy M. Lucas, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed. |
| Counsel on Appeal | Mario Kladis (argued), of State Appellate Defender's Office, of Ottawa, for appellant. |
| | Jerry Brady, State's Attorney, of Peoria (Nadia L. Chaudhry and Thomas D. Arado (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion. |
| | Justices Carter and Holdridge concurred in the judgment and opinion. |

## OPINION

¶ 1    The defendant, Omar Porter, was convicted of armed violence (720 ILCS 5/33A-2(a) (West 2010)) after a stipulated bench trial, following the denial of his motion to quash his arrest and suppress evidence. The defendant appealed.

¶ 2                                          FACTS

¶ 3    The defendant was arrested on October 2, 2010, and found in possession of a loaded handgun and approximately five grams of cocaine. He was later indicted for armed violence (720 ILCS 5/33A-2(a) (West 2010)), unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2010)), two counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1) (West 2010)), and unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2010)). The defendant filed a motion to quash his arrest and suppress evidence, arguing that the evidence was discovered during an unlawful arrest and seizure. The trial court held a hearing on the motion.

¶ 4    Peoria police officer Denise White testified that she arrived at a home on Northeast Monroe Street in Peoria at 3:56 am on October 2, 2010, in response to a possible home invasion. The victim told White that she had been sleeping on the couch and woke up to find a man standing over her shining his cell phone light at her. The man went into another room, and the victim never saw him again. The victim described the man as a black male with a dark complexion and braids, wearing a dark hat and dark clothing.

¶ 5    Peoria police officer Jacob Beck testified that he was alone in his squad car when he responded to a call about a home invasion in the early morning hours of October 2. When the

description went out, and another officer stated the he saw a man walking that could have been the male involved, Beck traveled in the same direction and saw a man matching that description in the Super Pantry. Beck saw a black male, with small braids, wearing a black shirt and black hat. He had a red T-shirt on under the black button-up shirt. As Beck walked up to the front door, the defendant looked and saw Beck and took a couple of steps backwards, looked at the rear exit door, and saw another officer at the back door. The defendant did not make any quick movements, nor did he reach into his coat or his pockets. Beck motioned for the defendant to come out of the store, which he did. The report from dispatch did not indicate that the victim of the home invasion saw a weapon, and Beck had no other notice that the suspect was known to have a weapon on him. As the defendant exited the store, Beck, who held the door open, grabbed the defendant by the left wrist to conduct a patdown for officer safety reasons. Beck did not remember what he said to the defendant. The defendant tried to pull away, and he tried to take off running.

¶ 6        Sergeant Paul Segroves, also with the Peoria police department, testified that he responded to a call regarding a possible home invasion on the morning of October 2. On his way to the scene, a few blocks from the home, he observed a black male walking southbound, on the river side of the street. Segroves thought it was odd because it was raining out and there were no homes of the river side of the street. He reported that he just passed a male, and gave his description, and then went to the scene. When the victim's description fit the description of the man he saw, Segroves got back in his car to go look for him. Segroves knew that the Super Pantry, about eight blocks away, was the only open business in the area, so he went there, and Beck followed. Segroves went around back, and he saw the defendant walking toward the back of the store until the defendant saw Segroves' car. Segroves testified that Beck motioned the defendant to come out the front door, and Beck grabbed the defendant's arm when he did. The defendant immediately started to twist and attempted to run. They struggled for about 10 feet and fell into the gas pumps. During the struggle, a pistol fell out of the defendant's belt.

¶ 7        The defendant testified that he was walking from his sister's house to the Super Pantry around 4 a.m. on the morning of October 2 to buy something to drink. He was walking southbound, and he remembered seeing the police officer drive past him going north. He testified that he was wearing a black T-shirt with a long-sleeve red shirt underneath, with a black hat with a red Dodgers logo, and he had braids. He continued into the Super Pantry. He noticed about four other people in the Super Pantry; none were dressed like the defendant and none had braids. While in line to check out, he noticed both officers pull up to the Super Pantry. The defendant denied walking toward the back door. He followed Beck out of the store, and he testified that Beck immediately grabbed his right arm and tripped him to the ground. The defendant testified that, after asking him to step outside, Beck did not say anything else to the defendant.

¶ 8        The trial court denied the motion, finding that there were articulable facts that justified the stop and temporary detention. It found that the defendant was walking in a generally nonpedestrian area away from where a home invasion was reported, the defendant matched the description of the home invader, the defendant made furtive movements inside the store, and

the defendant attempted to flee. Under those facts, the trial court found that the police officers were acting reasonably when they stopped the defendant and a patdown was justified.

¶ 9        The defendant waived his right to a jury trial and consented to a stipulated bench trial, preserving the issue of the search and seizure for appeal. The defendant was convicted of armed violence and sentenced to 20 years in prison. The defendant appealed.

¶ 10                                          ANALYSIS

¶ 11        The defendant argues that the trial court should have granted his motion to quash and suppress because the police did not reasonably suspect that the defendant had committed a crime. Even if the police had reasonable suspicion, the defendant argues that they exceeded the scope of the investigatory stop when they seized him and began searching him for weapons when they did not have a reasonable suspicion that he was armed and dangerous. The State argues that the police officers had a reasonable suspicion to stop the defendant.

¶ 12        The United States and Illinois Constitutions protect people from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Generally, reasonableness requires a warrant supported by probable cause. *People v. Flowers*, 179 Ill. 2d 257 (1997). Police officers can, however, briefly stop and question an individual without a warrant if they suspect that the individual committed, is committing, or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1 (1968). When conducting a *Terry* stop for such an investigatory purpose, police officers, when necessary for safety, may conduct a limited protective search for weapons. *Flowers*, 179 Ill. 2d at 262. In determining whether a police officer's suspicion was reasonable, courts consider the totality of circumstances surrounding the stop. *People v. Smith*, 331 Ill. App. 3d 1049 (2002). When reviewing a trial court's ruling on a motion to suppress evidence, we will uphold factual findings unless they are against the manifest weight of the evidence, but we review *de novo* the ultimate legal question of whether suppression was warranted. *People v. Absher*, 242 Ill. 2d 77 (2011).

¶ 13        In denying the defendant's motion, the trial court found that the area that the defendant was walking was suspicious because it was a generally nonpedestrian area near the scene of a reported home invasion. It found that the defendant, with his black shirt and hat and braids, matched the description of the invader. It also found that the defendant's steps toward the back of the store, after seeing the police officer arrive in the front, were furtive movements. Based upon the testimony of the witnesses, those factual findings were not unreasonable or arbitrary, or not based upon the evidence. See *People v. Deleon*, 227 Ill. 2d 322 (2008) (a finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident, or if the finding is unreasonable, arbitrary, or not based on the evidence). In light of those factual findings, an investigatory stop of the defendant, based upon the reasonable suspicion that the defendant committed a crime, was justified.

¶ 14        The defendant argues that even if the stop was justified, the officers exceeded the scope of the *Terry* stop by grabbing him to conduct a patdown search for weapons when they did not have a reasonable suspicion that he was armed and dangerous. Although there are circumstances when a police officer physically grabbing a suspect to effectuate a stop is warranted, those circumstances were not present in this case. See *United States v. Sokolow*,

- 4 -

490 U.S. 1 (1989) (grabbing a suspect and moving him to a sidewalk to prevent him from departing an airport in a taxicab was reasonable under the circumstances to effectuate a stop). Officer Beck waved the defendant toward himself at the front door of the Super Pantry, and the defendant complied. Beck even held the door open for the defendant to exit. Beck did not give the defendant an opportunity to answer any questions, but immediately grabbed the defendant and put him in a lock to conduct a patdown.

¶ 15 During a *Terry* stop, a limited search for weapons, or a "frisk," is warranted only if a police officer has reason to believe that the defendant is armed and dangerous. *Flowers*, 179 Ill. 2d at 262; 725 ILCS 5/108-1.01 (West 2010). The reasonableness of a police officer's belief is measured by an objective standard, whether a reasonably prudent person in the circumstances would be warranted in believing that his safety or that of others was in danger. *Flowers*, 179 Ill. 2d at 264. If a protective search goes beyond what is necessary to determine if a suspect is armed, it is no longer valid under *Terry* and any fruits of the search will be suppressed. *People v. Sorenson*, 196 Ill. 2d 425 (2001).

¶ 16 Although Beck testified that he grabbed the defendant to conduct a patdown for officer safety reasons, he did not articulate any reasons that would lead a reasonably prudent person to believe his safety was in danger. The victim of the home invasion reported that the suspect had a cell phone, but did not report any weapon. The officers both testified that the defendant made furtive movements toward the back door, but Beck testified that the defendant only took a couple of slow steps toward the back of the store, and the defendant never made any move to reach inside his coat or pockets. The defendant did not attempt to flee until after Beck grabbed him to conduct the patdown. While a police officer can physically restrain someone when he attempts to flee, the physical contact in this case came before the defendant made any attempt to flee. Measured by an objective standard, Beck had no reason to believe that the defendant was armed and dangerous. Thus, we conclude that the trial court erred in denying the defendant's motion to quash and suppress. Without the evidence that should have been suppressed, the State cannot prove the defendant's guilt. Accordingly, we reverse defendant's conviction and vacate his sentence. See *People v. Kipfer*, 356 Ill. App. 3d 132 (2005).

¶ 17                                    CONCLUSION
¶ 18 The judgment of the circuit court of Peoria County is reversed.

¶ 19 Reversed.