*In re J.J.*, a Minor (The People of the State of Illinois, Petitioner-Appellant, v. J.J., Respondent-Appellee).
Second District No. 2—88—0246

Opinion filed May 15, 1989.

382

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Colleen Griffin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Respondent, J.J., was charged in a petition for adjudication as a delinquent minor filed in the circuit court of Kane County with the offenses of unlawful possession of a controlled substance (Ill. Rev. Stat. 1987, ch. 56½, par. 1402(a)(2)) and unlawful use of weapons (Ill. Rev. Stat. 1987, ch. 38, par. 24—1(a)(4)). Following the granting of respondent's motion to quash arrest and suppress evidence seized during a pat-down search, the State appeals pursuant to Supreme Court Rules 604(a)(1) and 660(a) (107 Ill. 2d Rules 604(a)(1), 660(a)).

The sole issue raised on appeal is whether the granting of respondent's motion to quash arrest and suppress evidence was manifestly erroneous because the stop of respondent was valid under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

While the motion to quash arrest and suppress evidence alleged generally that respondent's arrest was illegal, the focus of the arguments before the trial court and in this court is that the initial stop of respondent was invalid.

At the suppression hearing, respondent placed in evidence an audio tape of a telephone call made to the Elgin police department at approximately 12:15 a.m. on October 18, 1987. The audio tape reveals that a security guard at the McDonald's restaurant on Summit Street in Elgin reported that there was a man with a gun in the restaurant. The guard had not seen the gun himself but had been told about it by a customer. He described the subject with the gun as a black male, approximately 25 years old, wearing black pants, a blue and white jacket, and white tennis shoes. The subject exited the restaurant and was reported to be walking southbound on Gifford Street. The dis-

patcher radioed the information to squad cars in the area.

Officer Robert Christ of the Elgin police department testified at respondent's detention hearing, and his testimony was offered into evidence at the suppression hearing. According to Christ, when he received the radio dispatch concerning a man with a gun, he was only three blocks from the McDonald's restaurant. He proceeded to the restaurant and, as he approached, he saw respondent walking nearby and crossing the street. Respondent matched the description the officer had received over the radio. Officer Christ pulled up in front of respondent, exited the squad car, and indicated to respondent to come over to the squad car. Christ had respondent put his hands on the trunk of the squad car and patted him down as a gun had been mentioned. He felt a gun in respondent's jacket pocket. After recovering the gun, a .38 caliber Colt Cobra handgun, he and another officer continued the search and discovered ammunition in respondent's pants pocket and a small bag with packets of white powder in another jacket pocket. The powder tested positive for cocaine.

Respondent testified that on October 18, 1987, at approximately midnight, he had been at McDonald's. As he walked away from the restaurant, he was stopped by the police. He was told to put his hands up, and he was searched.

In granting the suppression order, the trial court, relying on the holding in *People v. Moraca* (1984), 124 Ill. App. 3d 561, 464 N.E.2d 312, found that an uncorroborated tip was insufficient to justify an investigatory stop.

The State contends that Officer Christ had sufficient articulable facts which justified the initiation of a temporary stop for investigatory purposes. Respondent argues that the stop, based solely upon information from an anonymous person that a certain described person was carrying a gun, was not justified.

■ On a motion to suppress evidence, the burden of proof is on the defendant to establish that the search and seizure were unreasonable. (*People v. Neal* (1985), 109 Ill. 2d 216, 218, 486 N.E.2d 898, 899.) A reviewing court will not reverse the trial court's finding on a motion to suppress evidence unless the finding is manifestly erroneous. *Neal*, 109 Ill. 2d at 218, 486 N.E.2d at 899.

■ In *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, the Supreme Court recognized a limited exception to the probable cause requirement which allows a police officer, under appropriate circumstances and in an appropriate manner, to briefly detain a person for investigatory purposes and, if necessary for safety, to conduct a limited protective search of that person for concealed weapons.

Specific and articulable facts, and not a mere hunch, must exist to justify a *Terry* stop and a frisk for a weapon. (*Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.) These principles have been codified in our Code of Criminal Procedure of 1963. Ill. Rev. Stat. 1987, ch. 38, par. 107—14; see *People v. Long* (1983), 99 Ill. 2d 219, 228, 457 N.E.2d 1252.

In *Adams v. Williams* (1972), 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921, the Supreme Court addressed the propriety of a police officer's reliance on an informant's tip in conducting a *Terry* stop. In *Adams*, the police officer was patrolling alone early in the morning in a high-crime area when a person known to the officer approached his squad car and informed him that an individual seated in a nearby vehicle was carrying narcotics and had a gun in his waistband. (*Adams*, 407 U.S. at 144-45, 32 L. Ed. 2d at 616, 92 S. Ct. at 1922.) The officer, after radioing for assistance, approached the vehicle, tapped on the window, and asked the occupant to open the door. When the occupant rolled down the window instead, the officer reached into the vehicle and removed a fully loaded revolver from the occupant's waistband. *Adams*, 407 U.S. at 145, 32 L. Ed. 2d at 616, 92 S. Ct. at 1922-23.

The majority held that the officer acted justifiably in responding to the informant's tip. (*Adams*, 407 U.S. at 146, 32 L. Ed. 2d at 617, 92 S. Ct. at 1923.) The Court further held that because the officer knew the informant and had received information from him previously, because the informant came forward personally, and because the information was immediately verifiable at the scene, the information carried enough indicia of reliability to justify the officer's stop of the vehicle's occupant even though the unverified tip may have been insufficient to establish probable cause for an arrest or a search warrant. *Adams*, 407 U.S. at 146-47, 32 L. Ed. 2d at 617, 92 S. Ct. at 1923-24.

Moreover, the Court rejected the argument that reasonable cause for a stop and frisk can only be based on an officer's personal observation rather than on information supplied by another person. (*Adams*, 407 U.S. at 147, 32 L. Ed. 2d at 617, 92 S. Ct. at 1924.) The majority recognized that informants' tips may vary greatly in their value and reliability and that one simple rule will not cover every situation. Where some tips, completely lacking in indicia of reliability, would warrant either no police response or require further investigation before a stop would be justified, other situations, such as when a victim of a crime seeks immediate police aid and describes his assailant or when a credible informant warns of a specific impending crime,

would justify the police making an appropriate response. (*Adams*, 407 U.S. at 147, 32 L. Ed. 2d at 617-18, 92 S. Ct. at 1924.) As the Court noted in *Adams*, the fourth amendment does not require a police officer who lacks the precise level of information necessary to establish probable cause to simply shrug his shoulders and allow a crime to occur or a criminal to escape. *Adams*, 407 U.S. at 145, 32 L. Ed. 2d at 616, 92 S. Ct. at 1923.

■ It must also be emphasized that the underlying inquiry in any *Terry*-type situation is whether the police officer's conduct was reasonable under the circumstances known to the officer at the time he initiated the stop and frisk. (See *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883; *Adams*, 407 U.S. at 148, 32 L. Ed. 2d at 618, 92 S. Ct. at 1924; *People v. Long* (1983), 99 Ill. 2d 219, 227-28, 457 N.E.2d 1252.) The reasonableness of such police conduct depends upon a balancing of the public's interest and the individual's right to personal security free from arbitrary interference by law officers. (*People v. Smithers* (1980), 83 Ill. 2d 430, 434, 415 N.E.2d 327.) To be reasonable, the officer's inferences must be based on more substantial facts than would support a mere hunch. In order for the police to justify a temporary detention and frisk for weapons, they must point to specific articulable facts which, when taken together with natural inferences, make the intrusion reasonable. *Smithers*, 83 Ill. 2d at 435-36, 415 N.E.2d at 331.

Before analyzing the facts in this case, we first point out the two-step analysis set forth in *Terry*. The question of whether a stop is valid is a distinct and separate inquiry from whether a frisk is valid. (*People v. Galvin* (1989), 127 Ill. 2d 153, 163.) The defendant here, however, has not raised the issue either below or in this appeal as to the reasonableness of the officer's frisking him after the initial stop, but rather, has only addressed the validity of the initial stop. Because the parties have not argued the propriety of the officer's frisk, we need not reach that question.

■ Here, the police received a telephone report from a security officer at a McDonald's restaurant that someone in the restaurant had pointed out an individual and said he was carrying a gun. The security officer then observed the suspect, obtained a description, and ascertained that the suspect was travelling south on Gifford Street on foot, all of which he conveyed directly to the police radio dispatcher. The dispatcher, in turn, dispatched this information to patrol units, one of which was only three blocks from the McDonald's. In responding, the officer observed someone fitting the description crossing the street near the McDonald's and stopped him. We believe under these

circumstances that the initial stop of defendant was reasonable under the fourth amendment.

■ The fact that the initial source of the information in this case came from a citizen informant, albeit an unnamed one, does not render the subsequent stop unreasonable. The informant came forward personally to give information to the security officer which was immediately conveyed to the police. We discern no significant distinction between a citizen's in-person complaint to the police and the citizen's complaint here to a security officer, a person of apparent police authority. The police, in turn, immediately dispatched the information to a squad car that was only three blocks from the restaurant. As such, the information was verifiable within a matter of minutes in a location close to the scene of the reported activity. (See *Adams*, 407 U.S. at 146, 32 L. Ed. 2d at 617, 92 S. Ct. at 1923.) Additionally, this information did not come from a completely anonymous telephone source, but, rather, came from an in-person citizen complaint. As such, we need not as rigorously scrutinize the citizen's reliability to justify the stop as would be the case of an informant's unverified tip for a narcotics arrest or search warrant. (See *Adams*, 407 U.S. at 146-47, 32 L. Ed. 2d at 617-18, 92 S. Ct. at 1923-24.) Furthermore, in the analogous situation where police officers receive information from a private citizen or victim, they may rely on that information without independent verification of the citizen's reliability for the purpose of determining whether probable cause to arrest exists. (*People v. Sain* (1984), 122 Ill. App. 3d 646, 650-51, 461 N.E.2d 1043; see 1 W. LaFave & J. Israel, Criminal Procedure §3.3, at 204-05 (1984); see also *Chambers v. Maroney* (1970), 399 U.S. 42, 46, 26 L. Ed. 2d 419, 425-26, 90 S. Ct. 1975, 1978-79.) Thus, keeping in mind the less intrusive nature of an investigatory stop, we do not believe that police reliance on an in-person citizen complaint of someone with a gun made to a security officer and promptly relayed to the police renders the immediate investigatory stop based thereon unreasonable.

■ Furthermore, under the additional circumstances present here, we do not find this stop to be unreasonable. The information provided by the security officer as to the suspect's description was detailed and provided the officer with a limited basis for stopping defendant. The suspect was in the vicinity of the McDonald's and fit the description provided by the security officer. Additionally, the report was of a person with a gun, which may constitute a criminal offense, and the officer by himself confronted the suspect. Under these circumstances the officer's action in stopping respondent was a limited detention designed to protect himself and others and was not un-

reasonable. (See *Terry*, 392 U.S. at 29, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884.) As the Supreme Court has noted, the fourth amendment does not require a police officer who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. (*Adams*, 407 U.S. at 145, 32 L. Ed. 2d at 616, 92 S. Ct. at 1923.) And, as further stated by our supreme court, we should evaluate the officer's actions in the light of one's reaction had the officer failed to act. (*Smithers*, 83 Ill. 2d at 439, 415 N.E.2d at 332.) The "man with a gun" report, under the particular circumstances here, alerted Officer Christ to a potentially dangerous situation justifying his immediate action in stopping the respondent. (See *Smithers*, 83 Ill. 2d at 439, 415 N.E.2d at 332.) We do not view these facts with analytical hindsight but instead consider them from the perspective of a reasonable officer at the time that the situation confronted him. See *People v. Long* (1983), 99 Ill. 2d 219, 228-29, 457 N.E.2d 1252.

We further note that defendant's reliance on *People v. Moraca* (1984), 124 Ill. App. 3d 561, 464 N.E.2d 312, is misplaced. In that case, the court held that a *Terry* stop based on an anonymous telephone tip was unreasonable under the fourth amendment. (*Moraca*, 124 Ill. App. 3d at 564-67, 464 N.E.2d at 315-17; see also *Village of Gurnee v. Gross* (1988), 174 Ill. App. 3d 66, 69-70, 528 N.E.2d 411 (while reasonable cause to stop an individual may be based on an informant's tip, some indicia of reliability must be provided to justify a *Terry* stop).) The *Moraca* court was careful to distinguish that situation from one where the informant speaks directly to the police, the information is immediately verifiable at the scene, and the information is specific as to the person being presently armed. *Moraca*, 124 Ill. App. 3d at 565, 464 N.E.2d at 315.

■ As discussed above, in this case the information came from an in-person citizen complaint reported to a security guard of apparent police authority which identified a specific person as being presently armed which was immediately verifiable at the scene, and as such we find *Moraca* to be distinguishable from this case. Because we do not find *Moraca* applicable to the situation presented by this case, we find it unnecessary to address the correctness of the court's application of *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, a case addressing the propriety of relying on an anonymous tip as the basis for probable cause for issuance of a search warrant, to the question of whether it is reasonable for a police officer to rely on an informant's tip to justify a stop under the less stringent standard enunciated in *Terry*. See *Adams*, 407 U.S. at 147, 32 L. Ed. 2d at

617, 92 S. Ct. at 1923-24.

██ Finally, as noted above, defendant has not raised the issue of the reasonableness of the officer's subsequent frisk following the initial stop. Nevertheless, based on the circumstances presented in the record, it was not unreasonable for the officer, who by himself had stopped a person reported to be armed with a gun, to have immediately frisked that person to establish whether he had a weapon in order for the officer to protect himself. See *Adams*, 407 U.S. at 148, 32 L. Ed. 2d at 618, 92 S. Ct. at 1924.

The judgment of the circuit court of Kane County is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

UNVERZAGT, P.J., and LINDBERG, J., concur.