THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RENE R. PANTOJA, Defendant-Appellant.

Second District   No. 2—88—0748

Opinion filed June 15, 1989.

Judith M. Brawka, Public Defender, of Geneva (Mary E. Dixon, Assistant Public Defender, of counsel), for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Colleen M. Griffin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Rene R. Pantoja, was charged in the circuit court of Kane County with unlawful use of a weapon (Ill. Rev. Stat. 1987, ch. 38, par. 24—1(a)(4)), no firearm owner's identification card (Ill. Rev. Stat. 1987, ch. 38, par. 83—2(a)), unlawful possession of fireworks (Ill. Rev. Stat. 1987, ch. 127½, par. 128), and defacing a firearm (Ill. Rev. Stat. 1987, ch. 38, par. 24—5(a)). Following the denial of his motion to suppress evidence, defendant stipulated to the evidence presented at the suppression hearing and other facts presented to the court and was found guilty of unlawful use of a weapon and unlawful possession of fireworks. He was sentenced to a 12-month period of probation and a $150 fine on the former conviction and a concurrent 12-month period of probation and a $100 fine on the latter conviction. The remaining two charges were stricken with leave to reinstate.

On appeal, defendant contends that the circuit court erred in denying his motion to suppress, as both the stop and subsequent search of his person and vehicle were unreasonable.

Following his arrest, defendant filed a motion to suppress evidence asserting that his warrantless detention and arrest and the subsequent seizure of evidence were without probable cause and illegal. At the suppression hearing, defendant testified that, as he sat parked behind the wheel of his automobile on July 9, 1987, in Elgin, he was arrested without a warrant.

The only witness for the State, Elgin police detective Henry Smith, who was in charge of gang crimes and investigations, testified that while driving in his vehicle he heard a radio dispatch to other officers that defendant had been seen in Elgin with a handgun. A description of defendant's car was also given. The information over the police radio dispatch had been provided to the police by an anonymous citizen complainant who was unwilling to give a name. All that was stated to the police was that defendant had a handgun and had left a location in a certain described vehicle. Smith knew defendant, his address, what vehicle he drove, and that defendant was considered to be a leader of a gang in Elgin. He also was aware that on last New

Year's Eve defendant and other persons were in the area where gunshots were fired and a gun was found. He proceeded to defendant's residence and, upon finding that defendant's vehicle was not there, proceeded down the street, where he located the parked vehicle. Defendant was seated behind the steering wheel, and a passenger was seated in the vehicle. A third person was standing beside the vehicle.

Smith had both persons exit the vehicle. There was nothing unusual about these persons' activities. After backup officers arrived, he searched defendant and the other two persons. No weapon was found. Smith then searched the area of the vehicle where defendant was seated and found fireworks on the front floor. Defendant was placed under arrest for unlawful possession of fireworks. Before the vehicle was towed to the police station, an inventory search was conducted. While other officers conducted the inventory of the vehicle, Smith questioned defendant at the police station about the handgun and was told by defendant that he did have a gun in his possession, but had given it to another person before Smith arrived. When Smith later learned that a handgun was found near the glove compartment of the vehicle during the inventory search at the scene, he confronted defendant with that fact, and defendant admitted he had the gun in the dashboard area of the vehicle.

In denying the motion to suppress, the trial judge found the initial stop reasonable based on the anonymous citizen complaint that defendant had just been seen with a handgun in his possession, on Detective Smith's previous knowledge of defendant and the incident of gunshots being fired and a gun being found on last New Year's Eve when defendant was present, and on Smith's corroborating observation shortly after the dispatch of defendant sitting in the vehicle described in the dispatch. The trial court further found the limited search yielding the fireworks to be justified and the further search of the vehicle at the scene to be legal.

We initially address whether there was a valid stop of defendant. Defendant contends that the anonymous informant's tip which led to the stop was lacking in detail and reliability. Furthermore, he contends that Smith's prior knowledge about defendant and the sole fact that defendant was in the described car were insufficient corroborating facts to overcome the lack of reliability of the anonymous tip. Defendant principally relies on this court's decision in *People v. Moraca* (1984), 124 Ill. App. 3d 561, 464 N.E.2d 312.

The State contends that this is a valid stop under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. While conceding that the information from the unknown informant "may not be

enough facts on which to base a *Terry* stop," the State argues that, because Detective Smith knew of defendant, knew where he lived, knew what vehicle he drove, knew he was a gang member, and knew of the New Year's Eve incident involving a gun, there were sufficient corroborating facts to justify the stop in this case.

■■ ■ At the outset, we note that while defendant was already stopped in his vehicle before Detective Smith arrived, the act by Detective Smith in ordering defendant from his vehicle is clearly a seizure upon which the "stop and frisk" analysis under *Terry* is formulated. (*Terry*, 392 U.S. at 16-18, 20 L. Ed. 2d at 903-04, 88 S. Ct. at 1877-78.) In *Terry*, the Supreme Court recognized a limited exception to the probable cause requirement which allows a police officer, under appropriate circumstances and in an appropriate manner, to briefly detain a person for investigatory purposes and, if necessary for safety, to conduct a limited protective search of that person for concealed weapons. Specific and articulable facts, and not a mere hunch, must exist to justify a *Terry* stop and frisk for a weapon. (*Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883.) These principles have been codified in our Code of Criminal Procedure of 1963. Ill. Rev. Stat. 1987, ch. 38, par. 107—14; see *People v. Long* (1983), 99 Ill. 2d 219, 228, 457 N.E.2d 1252.

■■ The underlying inquiry in any *Terry*-type situation is whether the police officer's conduct was reasonable under the circumstances known to the officer at the time he initiated the stop and frisk. (See *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883; *People v. Long* (1983), 99 Ill. 2d 219, 227-28, 457 N.E.2d 1252.) The reasonableness of such police conduct depends upon a balancing of the public's interest and the individual's right to personal security free from arbitrary interference by law officers. (*People v. Smithers* (1980), 83 Ill. 2d 430, 415 N.E.2d 327.) To be reasonable, the officer's inferences must be based on more substantial facts than would support a mere hunch. In order for the police to justify a temporary detention and frisk for weapons, they must point to specific articulable facts which, when taken together with natural inferences, make the intrusion reasonable. *Smithers*, 83 Ill. 2d at 435-36, 415 N.E.2d at 331.

Our court in two recent decisions, *People v. Moraca* (1984), 124 Ill. App. 3d 561, 464 N.E.2d 312, and *In re J.J.* (1989), 183 Ill. App. 3d 381, has had occasion to consider application of the "stop and frisk" principles to situations similar to the instant case. We conclude that the facts in *Moraca* are quite comparable to the facts here and that decision is controlling.

In *Moraca*, this court held that a *Terry* stop based on an anony-

mous telephone tip to the Elgin police department, conveyed through an organization called CATCH, that a specified person, later determined to be the defendant, driving a certain van was in possession of a machine gun and in possession of cannabis, was unreasonable under the fourth amendment. (*Moraca*, 124 Ill. App. 3d at 565-67, 464 N.E.2d at 315-17.) There were no other suspicious circumstances or corroborating evidence to justify the stop other than the anonymous tip.

In contrast to *Moraca*, we held in *In re J.J.* that a citizen complaint of a particularly described person with a gun made directly to a security guard who immediately conveyed the complaint to the police, who minutes later stopped the described person, the defendant, was reasonable. (*In re J.J.*, 183 Ill. App. 3d at 387.) We further held that an in-person citizen complaint need not be as rigorously scrutinized for reliability to justify the stop as would be the case of an anonymous informant's unverified tip. *In re J.J.*, 183 Ill. App. 3d at 387.

■ While apparently conceding that the anonymous tip alone was insufficient to justify a *Terry* stop, the State maintains that there were sufficient corroborating facts to justify the stop. In particular, the State relies on the testimony of Detective Smith that he knew defendant, knew where defendant lived, knew what vehicle he drove, and knew that defendant was a gang member and had been present on a previous occasion where there had been a report of shots being fired and a gun found. The facts that Detective Smith knew defendant was a gang member and had been present on a prior occasion where shots were fired and a gun was found do not corroborate the anonymous information that he possessed a gun at the time he was stopped, although, were Smith legally justified to make the stop, this information would tend to provide reason to believe defendant may be armed thereby justifying a limited weapons *search* to protect himself. (See *Adams v. Williams* (1972), 407 U.S. 143, 146, 32 L. Ed. 2d 612, 617, 92 S. Ct. 1921, 1923.) Nor do the facts that Smith knew defendant and his address and that the vehicle he was driving was the same as that described by the anonymous informant provide sufficient corroboration of the reliability of the anonymous information to justify a stop. There was no testimony that Smith viewed any suspicious conduct which might corroborate the anonymous tip. (See, *e.g.*, *Village of Gurnee v. Gross* (1988), 174 Ill. App. 3d 66, 70-71, 528 N.E.2d 411.) Further, there are no other facts argued which might buttress the reasonableness of the belief that an immediate stop was necessary. See *People v. Smithers* (1980), 83 Ill. 2d 430, 438, 415 N.E.2d 327.

Based upon the above analysis of the stop of defendant, the denial

of the motion to suppress evidence was manifestly erroneous. We, therefore, need not examine whether the subsequent searches of defendant and his vehicle were also unreasonable. The defendant's conviction is reversed, and the cause is remanded for a new trial with directions that the motion to suppress evidence be granted.

Reversed and remanded with directions.

McLAREN and NASH, JJ., concur.