8 November 1999

NO. 4-98-0950

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from 

Plaintiff-Appellant, ) Cir­cuit Court of

      v. ) Vermilion County DOUGLAS C. BRANNON,      ) No. 97CF372

Defendant-Appellee. ) 

     ) Honorable

) John P. O'Rourke,

) Judge Presid­ing.

JUSTICE GARMAN delivered the opinion of the court:

In July 1997 the State indicted defendant, Doug­las C. Brannon, on possession of more than 30 but less than 500 grams of can­na­bis with in­tent to de­liv­er (720 ILCS 550/5(d) (West 1996)), pos­ses­sion of more than 30 but less than 500 grams of can­na­bis (720 ILCS 550/4(d) (West 1996)), and un­law­ful use of a weap­on by a fel­on (720 ILCS 5/24-1.1(a) (West 1996)).  In No­vem­ber 1998, the trial court grant­ed defendant's mo­tion to suppress evidence and quash his arrest upon its finding that the evi­dence against defendant was obtained in an illegal search of his vehi­cle.  The State brings this interlocutory ap­peal pursuant to Supreme Court Rule 604(a).  145 Ill. 2d R. 604(a).   

I. BACKGROUND

In December 1996, po­lice offi­cer Rhonda Swisher, a member of the Vermilion County Metro­politan Enforcement Group (VMEG) picked up a Crimestoppers' re­port from the VMEG mailbox at the Danville po­lice sta­tion.  (Crimestoppers' reports are taken over the phone by a police officer who records the tip on a Crimestoppers' report form.  Callers can remain anonymous but are assigned a number when they file a re­port.  The Crimestoppers program allows for payment to tipsters under certain condi­tions; the report form contains a section where the recording offi­cer indicates wheth­er the in­for­mant is inter­ested in a re­ward.  In this case, the officer noted "yes" in that section.)

The Crimestoppers' re­port ad­vised that Doug­las Brannon, a con­vict­ed felon, had a gun and ap­prox­imately one-half pound of canna­bis in the trunk of his car.  The report also con­tained the following de­tails:  Brannon lived in the 1300 block of Chan­dler; he was a white male with black hair, 5 feet 5 inches tall, and 130 pounds; he worked at Lowell's gro­cery store; and he drove a 1986 black and gray Chrys­ler LeBaron with a broken or missing rearview mirror. 

After receiving the report, Swisher, who already knew of defen­dant, took sev­er­al steps to corroborate the details of the re­port.  She first ran a crim­i­nal his­to­ry, and according to her testimony at the suppression hearing, it revealed that defen­

dant had "three dan­ger­ous drug of­fens­es ar­rests, three weap­on of­

fenses ar­rests, with one convic­tion for dan­ger­ous drugs."  Swisher spoke with a colleague, Agent Mark Peyton, who told her that he had executed a search warrant at defendant's residence 10 months earlier and had recovered 40 grams of cannabis and a can

nabis plant.  Swisher also ran a Secre­tary of State Soundex, which revealed that Brannon lived at 1324 Chan­dler and owned a 1986 Chrys­ler four door.  Swisher called Lowell's gro­cery store and veri­fied that Brannon was an employee and would be starting a shift at 4 p.m. that day.  She then parked outside Bran­non's address and began surveil­lance.   

At about 3:30 p.m., Swisher saw defendant pull out of his drive­way.  He was driving a gray and black car and the rear

view mir­ror was miss­ing.  Swisher followed Bran­non in her un

marked car and radioed for a marked unit to make a traf­fic stop.  Over the radio she indi­cated the driver was "possi­bly on route with a hand­gun."  Defendant was traveling a route one would logi

cally take to Lowell's grocery store.

In the 1300 to 1400 block of Vermilion, Lieutenant Richard pulled de­fen­dant over.  Swisher pulled up behind Richard's car; spe­cial agent Mark Peyton arrived in a sepa­rate un­

marked vehi­cle; and Officers Moreman and Crippin also ar­rived in separate cars.

Swisher advised defendant that he was pulled over be­

cause the police had obtained information that he was carrying a gun and a half pound of marijuana in the trunk of his car.  Testi­mony differed somewhat as to the details of the conversa

tions that fol­lowed.  Swisher testified that de­fen­dant told the offi­cers all he had in the trunk were some coins and that defen

dant was ner­vous.   

Peyton testified that defendant was extremely nervous, avoided his gaze, and moved around quite a bit.  Peyton further tes­ti­fied that he asked de­fen­dant if he could search the trunk; defen­dant said he did not want him to search the trunk; Peyton then took the keys out of the igni­tion, opened the trunk, and discovered the can­na­bis and a semiauto­matic handgun.

Defendant was arrested and, after a hearing in October 1998, the trial court grant­ed defen­dant's mo­tion to sup­press the evi­dence and quash his ar­rest.  The trial court made the follow

ing findings:

"1.  That on December 3, 1996, the [d]e­

fendant was stopped by Danville [p]olice [o]ffi­cers on a city street while driving his motor vehicle.

2.  That the Danville [p]olice searched the [d]efendant's locked car trunk, and that the [d]efendant did not give his consent to search the trunk.

3.  That the information given in the anony­mous call to 'Crimestoppers' *** was not sufficiently tested for its reliability.

4.  That there was insufficient corrobo­

ration of the information furnished in the call to 'Crimestoppers' to justify the search of the [d]efendant's car trunk.

5.  That, under the totality of the circum­stances, there was insufficient grounds to establish probable cause of the search of the [d]efendant's car trunk.

6.  That the search and seizure in this case violated the [d]efendant's [c]onsti­

tutional [r]ights." 

This appeal followed.

II. ANALYSIS

The trial court's decision on a motion to quash and suppress will not be disturbed on review unless it is determined to be clearly erroneous.  
People v. Foskey
, 136 Ill. 2d 66, 76, 554 N.E.2d 192, 197 (1990).  However, when only the trial court's legal conclu­sions are at issue, we review those conclu­sions 
de
 
novo
.  
People v. Gray
, 305 Ill. App. 3d 835, 837-38, 713 N.E.2d 781, 782 (1999).

"When a police officer has proceeded without a war­rant to search, seize evidence, or arrest a person, the trial court making a probable-cause determination is to apply standards at least as stringent as those that guide a magistrate in decid­ing whether to issue a warrant."  
People v. Tisler
, 103 Ill. 2d 226, 236, 469 N.E.2d 147, 153 (1984).  Whether probable cause exists is determined by the trial court based on the totality of the cir­cumstances present.  
Foskey
, 136 Ill. 2d at 76, 554 N.E.2d at 197.  "[P]robable cause does not demand the certainty we associ

ate with formal trials."  
Illinois v. Gates
, 462 U.S. 213, 246, 76 L. Ed. 2d 527, 553, 103 S. Ct. 2317, 2336 (1983).  "'[O]nly the probability, and not a prima facie show­ing, of crim­inal ac

tivity is the standard of probable cause.'"  
Gates
, 462 U.S. at 235, 76 L. Ed. 2d at 546, 103 S. Ct. at 2330, quoting 
Spinelli v. United States
, 393 U.S. 410, 419, 21 L. Ed. 2d 637, 645, 89 S. Ct. 584, 590 (1969).  The trial court must de­ter­mine wheth­er "'a rea­sonable and prudent man, hav­ing the knowl­edge pos­sessed by the officer at the time of the arrest, would believe the de­fen­dant committed the offense.'"  
Tisler
, 103 Ill. 2d at 237, 469 N.E.2d at 153, quoting 
People v. Wright
, 41 
Ill. 2d
 170, 174, 242 
N.E.2d
 180, 183 (1968).  Probable cause to arrest can be based on an informer's tip, if that tip is found to be reli­able.  
Foskey
, 136 Ill. 2d at 76, 554 N.E.2d at 197.  Probable cause determinations are made on a case-by-case basis.  
People v. Thompkins
, 121 Ill. 2d 401, 435, 521 N.E.2d 38, 52 (1988).

The question before us is whether, from the perspective of a reasonable person in Swisher's position, the tip, the cor

roboration of its details, and the officers' observations of defendant made it fairly probable that contraband would be found in defendant's car.  See 
People v. Adams
, 131 Ill. 2d 387, 398, 546 N.E.2d 561, 566 (1989).  We conclude that it did.  

A. Corroborating Information

Probable cause cannot be based on an anonymous tip that merely provides the static details of a suspect's life along with an allegation of criminal conduct.  See 
People v. Yarber
, 279 Ill. App. 3d 519, 529, 663 N.E.2d 1131, 1138 (1996).  Further inquiry, however, can inform an investigating officer whether the information provided by the tipster is more or less likely to be true.  If, after such inquiry, the officer reasonably concludes that a fair probability exists that the accused has committed or is committing the offense alleged, probable cause exists. 

In this case, Swisher's inquiry revealed two things that bear directly on the reliability of the tip.  First, she learned that defendant had two prior arrests and one prior con

viction for crimes identical to those alleged by the tipster, that is, possession of drugs and weapons.  Second, Swisher learned from Peyton that a large quantity of cannabis had been found at defendant's residence 10 months prior.  Peyton's infor

mation was pertinent because it increased the likelihood that what the tipster predicted, that the defendant would possess cannabis, was probable.   

We emphasize that it is the nature of defendant's  prior police contacts that bear on the reliability of the tip, not their mere existence.  Had defendant's prior arrests and convictions been for unrelated offenses, such as burglary or assault, they would have no bearing on the reliability of this tip.  Likewise, if the search of defendant's residence 10 months prior had been fruitless, or had turned up contraband other than cannabis, it would be of little significance.  The goal of corroboration is to reduce the chance of acting on a "'reckless or prevaricating tale'" and establish a basis for crediting the tip.  
Gates
, 462 U.S. at 244-45, 76 L. Ed. 2d at 552, 103 S. Ct. at 2335, quoting 
Jones v. United States
, 362 U.S. 257, 271, 4 L. Ed. 2d 697, 708, 80 S. Ct. 725, 736 (1960).  The information regard

ing defendant's prior police contacts corroborated both the type of activity and the type of contraband alleged in the tip.  Thus, its existence made it less likely that the tip was baseless.

Seemingly analogous cases reaching the opposite conclu

sion are distinguishable.  In 
People v. Moraca
, 124 Ill. App. 3d 561, 464 N.E.2d 312 (1984), and 
People v. Wilson
, 260 Ill. App. 3d 364, 632 N.E.2d 114 (1994), the police did not rely on infor

mation obtained through criminal records or prior police con

tacts.  In 
Yarber
, 279 Ill. App. 3d at 523, 663 N.E.2d at 1134, a criminal records check confirmed only the suspect's race, height, and weight.  In 
People v. Downey
, 198 Ill. App. 3d 704, 556 N.E.2d 300 (1990), and 
City of Lake Forest v. Dugan
, 206 Ill. App. 3d 552, 564 N.E.2d 929 (1990), the tips lacked detail to a significantly greater degree than the tip at issue here.  In 
Adams
, 131 Ill. 2d 387, 546 N.E.2d 561, where the court held that corroboration of the defendant's criminal record was, standing alone, insufficient corroboration, the defendant's prior conviction was for voluntary manslaughter while the tip alleged that the defendant was trafficking cocaine.  

In 
People v. Pantoja
, 184 Ill. App. 3d 671, 672-73, 540 N.E.2d 892, 892-93 (1989), an anonymous citizen complaint alleged that the defendant, Pantoja, had a handgun and had just left a certain location in a certain vehicle.  The arresting officer knew Pantoja and his vehicle and that he was a gang leader.  The officer also knew that, roughly seven months prior, Pantoja had been present in an area where shots were fired and a gun had been found.  The Second District Appellate Court held that the police did not have probable cause for a 
Terry
 stop.  
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).  The case at bar is distinguishable on two factual points.  First, Pantoja was seen "in the area" where a gun was found, while in the case at bar, cannabis was found at the defendant's residence.  Second, in 
Pantoja
, no mention is made of prior arrests or convictions for weapons offenses.  See also 
People v. Culbertson
, 305 Ill. App. 3d 1015, 1024, 713 N.E.2d 794, 802 (1999) (held, police officers had reasonable suspicion justifying a 
Terry
 stop when they acted on an untested informant's tip after their own inquiry revealed that the defendant had previously been arrested for burglary, the offense alleged by the tipster).

B. The Inherent Reliability of the Tip

1. The Crimestoppers' Line

Defendant contends that the tip is inherently suspect because the tipster indicated an interest in a monetary reward.  We disagree.  Tips given in exchange for payment have heretofore been considered less reliable than tips provided by citizen in

formants because we presume that citizen informants act out of an interest in aiding law enforcement efforts, not for personal gain.  See 
Adams
, 131 Ill. 2d at 397, 546 N.E.2d at 565-66.  A tip called into a Crimestoppers' line is more likely than not provided by a citizen informant.  The quintessential paid infor

mant, whose motives are presumably suspect, does not call a tip into the Crimestoppers' line but arranges to receive payment up front.  Although awards are available to Crimestoppers' tipsters under certain conditions (payment is likely awarded for tips that lead to arrests and/or convictions or tips that otherwise further an ongoing investigation), the tipster may not know what those conditions are when calling in a tip, and a tipster would there

fore not likely assume that an award would be made for a baseless tip.  The Crimestoppers system seems designed to encourage reli

able tips and discourage fraudulent ones.  Thus, the tipster's indicating an interest in an award, should one be available, has no bearing on the tipster's reliability and does not taint the tip.  Moreover, as the Supreme Court of Illinois stated in 
Adams
, 131 Ill. 2d at 396-97, 546 N.E.2d at 565:  

"The central issue is not the rigid classifi

cation of the infor­mant as an ordinary citi

zen or a paid informant but, rather, whether the information, taken in its totality, and interpreted not by technical legal rules but by factual and practical commonsense consid

erations, would lead a reasonable and prudent person to believe that the person stopped had committed an of­fense."

2. The Details of the Tip

When considering corroborated facts, the question is not whether the facts corroborated are innocent or incriminating, but whether the corroboration of those facts gives rise to an inference that the informant is credible and that he obtained his information in a reliable manner.  See  
Tisler
, 103 Ill. 2d at 251, 469 N.E.2d at 160.  In this case, Swisher corroborated all of the "innocent details" provided by the tipster.  She verified the description of defendant, a detailed description of his car, his address, and his place of employment.  While corroboration of these details alone would not be a sufficient basis for probable cause, they do lend credibility to the tipster.  As the Supreme Court of Illinois wrote in 
Tisler
, 103 Ill. 2d at 238, 469 N.E.2d at 154, "[w]hen a tip is proved accurate on some counts, *** the informant is more likely correct about other details, including the alleged illegal activity."

Also significant is the specificity with which the tipster described defendant's criminal conduct.  The tipster reported that defendant would have approximately one-half pound of cannabis and a gun in the trunk of his car.  Notably, the tipster provided a specific (albeit not exact) quantity of a specific type of contraband and indicated it would be in defen

dant's trunk, as opposed to in his car generally.  While these facts are conclusory allegations, their specificity indicates that the tipster had knowledge of defendant's habits and activi

ties and that the tip was not merely a "prevaricating tale."  

We hold that under the circumstances present in this case, a reasonable officer in Swisher's position, with the knowl

edge she had at the time, could conclude that it was fairly prob

able contraband would be found in defendant's car.  To reiterate, the critical factors present in this case and upon which we base our decision follow.  (1) The tip was left on the Crimestoppers' line, (2) all of the innocent details of the tip were corrobo

rated, (3) the tip alleged criminal conduct in detail, and (4) further investigation revealed that defendant had a history in

volving the same conduct as alleged by the tipster.

III. CONCLUSION

For the reasons stated, we reverse the trial court's ruling and remand for further proceedings not inconsistent with this order.

Reversed.

STEIGMANN and McCULLOUGH, JJ., concur.