THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICARDO O. PERKINS, Jr., Defendant-Appellant.

Third District   No. 3—01—0765

Opinion filed April 9, 2003.

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.

William Poncin, State's Attorney, of Macomb (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Defendant Ricardo O. Perkins was charged with possession of cannabis (720 ILCS 550/4(d) (West 2000)). He filed a motion to suppress evidence, which the trial court denied. Following a stipulated bench trial, defendant was convicted as charged. On appeal, defendant argues that the trial court erred in denying his motion to suppress. We reverse.

## BACKGROUND

At the suppression hearing, Officer Robert Bay of the Western Illinois University police department testified that he received information from a confidential source concerning Vaughn Reid. According to the informant, Reid would travel from Chicago to Macomb, Illinois, by

train on September 11, 2000, with drugs in his possession. Reid was described as a 33-year-old black male with a light beard, 6 feet 2 inches tall and weighing about 280 pounds. He was also known as "Debo." The informant related that Reid might be accompanied by a female, who would be the courier for the drugs. Bay and nine other members of a drug interdiction team planned to intercept Reid when he arrived in Macomb. The officers had an old photograph of Reid, and they verified that Reid was not at his residence in Macomb on September 11. That evening, two plainclothes officers boarded the train from Chicago in Galesburg and observed defendant in the company of a black female. Defendant, a 22-year-old student, was 6 feet 2 inches tall, weighed about 300 pounds and resembled Reid.

When the train arrived in Macomb, defendant disembarked and walked across the street to the university bus. The officers on the train pointed out defendant to Bay and the officers waiting at the train station. Bay and Agent Paul Larson followed defendant, while the rest of the team pursued his female companion. Defendant boarded the bus, flanked by Bay and Larson. Before defendant found a seat, the officers asked him to step off the bus because they needed to talk to him. Defendant asked Bay who he was. Bay identified himself as a police officer and produced his badge. Defendant then complied with the officers' request.

In a parking lot adjacent to the bus stop, Bay, Larson, Officer Pat Frazier and possibly one other officer questioned defendant. Bay and Larson displayed badges, and Bay asked defendant for his name and identification. Defendant said his name was "Rich Stevens" and denied that he had any identification. Bay ran an identification check for a Western University student named "Rich Stevens," which came back negative. Bay again asked defendant for identification. Defendant then produced an Illinois identification card from his backpack, which showed his correct name and date of birth.

While Bay was verifying the information on the card and obtaining a police record report for "Ricardo O. Perkins," Larson and Frazier engaged defendant in a discussion concerning his backpack. Larson asked whether defendant had packed the bag himself, and defendant acknowledged that he had. Larson asked whether there was anything in the bag that should not be there, and defendant said he did not think so. Larson asked if he could look inside the bag, and defendant handed it to Larson. When Larson unzipped the pocket, he smelled marijuana. Defendant then admitted that he had brought "a little weed to smoke." A bag containing approximately 81 grams of marijuana was removed from the backpack, and defendant was placed under arrest. Bay testified that he did not hear the discussion taking

place between Larson and defendant while he was on the telephone verifying defendant's identification. He said he learned that defendant had a prior police record but no outstanding warrants.

Defendant's version of the encounter varied slightly from the officers' account. Defendant said the first name he gave to Bay was "Richard Spencer." He said that Bay was the only officer who showed him a badge. He said that while Bay was verifying information from his identification card, Larson grabbed the backpack and said he was going to take a look in it. Larson asked defendant if he had any weapons or drugs in the bag, and defendant said, yes, he had some "weed." Larson then opened the bag, found marijuana and arrested him. Defendant said he weighed about 320 pounds on the date of the arrest.

Following arguments of counsel, the trial court denied defendant's motion to suppress evidence. The court found that defendant bore a sufficient resemblance to Vaughn Reid to give the officers "reasonable suspicion" when they saw defendant on the train. The court also stated that there was "reasonable suspicion to proceed" based on defendant's providing two different names when the officers asked for identification. Finally, the court found that defendant gave Larson consent to search his bag.

Defendant was subsequently convicted of unlawful possession of cannabis and sentenced to probation.

## ISSUES AND ANALYSIS

On appeal, defendant challenges the trial court's ruling on his motion to suppress. He argues that (1) the police lacked sufficient information based on the informant's tip to conduct a *Terry* investigation; or (2) even if the arresting officers had reasonable suspicion sufficient to conduct a *Terry* investigation to determine if he was Vaughn Reid, the search of his backpack was unlawful. In response, the State argues that the encounter was consensual and defendant was not "seized" for fourth amendment purposes until after Larson detected the odor of marijuana, at which point Larson had probable cause to arrest. In the alternative, the State argues that, assuming a *Terry* stop occurred, it took place after defendant gave false identification, which provided a reasonable suspicion that defendant was involved in criminal activity. Finally, the State contends that the search of defendant's bag was valid because it took place during a lawful stop and was consensual. Because the relevant facts are not in dispute, the issue before us is a question of law and our review is *de novo. People v. Robinson*, 322 Ill. App. 3d 169, 748 N.E.2d 739 (2001).

### I. Nature of the Encounter

Our initial inquiry concerns the nature of the encounter between

defendant and the officers when the investigation leading to defendant's arrest took place. If the encounter was consensual throughout, as the State argues, then no fourth amendment protections were implicated. See *United States v. Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980). However, if defendant was "seized," as he contends, the fourth amendment required that the police have either probable cause to arrest or a reasonable suspicion that defendant was involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *Florida v. Royer*, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983).

■ Mere police questioning does not constitute a *Terry* seizure. *Florida v. Bostick*, 501 U.S. 429, 115 L. Ed. 2d 389, 111 S. Ct. 2382 (1991). A seizure occurs when the police, by means of physical force or show of authority, have in some way restrained the person's liberty. *Terry*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. Indicia of a seizure include (1) the threatening presence of several officers; (2) display of a weapon; (3) physical touching of the defendant; or (4) use of language or tone indicating that compliance with the officer's request might be compelled. *Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870.

■ The evidence in this case established that defendant was surrounded by two plainclothes officers in the aisle of a bus when he was asked to step outside to answer questions. The officers did not display their weapons; however, Bay did show defendant his badge before escorting him to the parking lot. Once in the parking lot, one or more other officers assembled for the interview. At that point, if not before, there was a sufficient show of authority that no reasonable person innocent of an offense would have felt free to walk away and ignore the officers' questions. See *Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870. We hold, therefore, that defendant was seized, and any consensual aspect of the encounter had dissipated by the time defendant was asked for identification. See *Terry*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

## II. Reasonable Suspicion

■ Our second inquiry concerns the officers' justification for seizing defendant. A limited investigatory detention by the police is permissible only if it is based on a reasonable and articulable suspicion of criminal conduct. *Terry*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. The police must be able to point to specific facts which, together with natural inferences, make the intrusion reasonable. *Terry*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. Information provided by a known confidential source may be sufficient to make an investigatory stop if

the information carries indicia of reliability. *Adams v. Williams*, 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972).

■ In this case, the arresting officers had received detailed information from a confidential informant that Vaughn Reid—a man who generally fit defendant's physical description—and a female companion would be arriving in Macomb with drugs. According to Bay, the informant had previously provided reliable information. Independent corroboration of Reid's absence from his home in Macomb provided minimal support for the officer's belief that the informant had access to reliable information in this case. See *People v. Culbertson*, 305 Ill. App. 3d 1015, 713 N.E.2d 794 (1999). When the officers subsequently observed defendant in the company of a female on the train bound from Chicago to Macomb on the date predicted, they had sufficient reasonable suspicion that defendant was the man they sought. See *Adams*, 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921. Accordingly, we hold that the officers were justified in conducting a *Terry* investigation to determine whether defendant was Vaughn Reid.

### III. Duration and Scope of Investigation

■ Having found that a *Terry* investigation was justifiable, we must determine whether the limited scope and duration of the investigation were exceeded. The reasonableness of police conduct is determined by balancing the public's interest in crime prevention against the individual's right to personal security free from arbitrary interference by law officers. *People v. Pantoja*, 184 Ill. App. 3d 671, 540 N.E.2d 892 (1989). A *Terry* detention violates fourth amendment search and seizure protections if it is longer than necessary to effectuate the purpose of the stop or if the investigation proceeds beyond the legitimate scope of the stop. *People v. Brownlee*, 186 Ill. 2d 501, 713 N.E.2d 556 (1999); *People v. White*, 331 Ill. App. 3d 22, 770 N.E.2d 261 (2002).

■ The State admits that the purpose of the encounter in this case was to determine whether defendant was, in fact, Vaughn Reid. Defendant initially gave a fictitious name and falsely denied that he possessed identification. Defendant's reluctance to disclose his identity to the plainclothes officers, while perhaps understandable under the circumstances, warranted a further detention to verify his identification. The cannabis in defendant's backpack was discovered during Bay's verification of the information on defendant's identification card. Therefore, the duration of the detention cannot be said to have violated any fourth amendment guarantees.

■ Finally, we focus our inquiry on the scope of the investigation. Interrogation during a *Terry* stop must be reasonably related in scope

to the justification for initiating the stop. *White*, 331 Ill. App. 3d 22, 770 N.E.2d 261, citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975).

■ Here, we note that nothing occurred during the course of investigating defendant's identity that warranted expanding the scope of the detention to a drug investigation. None of the officers testified that the odor of marijuana was detected or that cannabis was visible when defendant retrieved his identification card from his backpack. Defendant simply produced a state identification card, which Bay verified. Bay ascertained that defendant had a prior criminal record but no outstanding warrants. Accordingly, once defendant handed over proof that he was not "Debo" or Vaughn Reid, the police had no reasonable, articulable suspicion that defendant was involved in criminal activity.

Larson's inquiry concerning the backpack was intended to elicit possible incriminating responses concerning matters wholly unrelated to defendant's identity. The mere fact that Larson was able to conduct a "fishing expedition" while Bay was still obtaining information concerning defendant's identity does not validate Larson's investigation of the backpack. See *White*, 331 Ill. App. 3d 22, 770 N.E.2d 261. We conclude that Larson's probe into defendant's backpack clearly exceeded the limited scope of the *Terry* investigation and thus violated defendant's fourth amendment guarantees of freedom from unreasonable search and seizure. Accordingly, defendant's alleged consent to search the bag was tainted, and the fruits of the search should have been suppressed. See *White*, 331 Ill. App. 3d 22, 770 N.E.2d 261; see also *United States v. Holt*, 264 F.3d 1215 (10th Cir. 2001).

Because the State cannot prevail on remand without the illegally obtained evidence, we reverse defendant's conviction and vacate his sentence. See *People v. Smith*, 331 Ill. App. 3d 1049 (2002).

## CONCLUSION

For the reasons stated, the judgment of the circuit court of McDonough County is reversed.

Reversed.

BARRY and LYTTON, JJ., concur.