NOTICE

Decision filed 02/25/21 The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180193-U

NO. 5-18-0193

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 12-CF-1744 |
| | ) | |
| ANDREW McKINNON, | ) | Honorable |
| | ) | Stephen P. McGlynn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's first-stage dismissal of the defendant's postconviction petition is reversed where the defendant presented the gist of a constitutional claim that he received ineffective assistance of counsel in that his plea counsel failed to investigate and discuss the unlawfulness of the stop of his vehicle, and his counsel failed to file a motion to suppress his arrest and subsequent evidence before he entered his guilty plea.

¶ 2    The defendant, Andrew McKinnon, appeals from the summary dismissal of his postconviction petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)).   For the following reasons, we reverse and remand for second-stage proceedings.

1

¶ 3                                    I. BACKGROUND

¶ 4     On December 21, 2012, the defendant was charged by indictment with one count of predatory criminal sexual assault of a child, a Class X felony (720 ILCS 5/11-1.40(a)(1) (West 2012)); one count of unlawful possession of a weapon by a felon, a Class 3 felony (*id*. § 24-1.1(a)); and three counts of aggravated assault, a Class A misdemeanor (*id*. § 12-2(c)(1)).  On May 1, 2014, the defendant entered a fully negotiated plea to one count of predatory criminal sexual assault.  In exchange for the guilty plea, the State agreed to recommend the minimum sentence of six years' imprisonment and to dismiss the other felony and the three misdemeanor counts.  The term of mandatory supervised release (MSR) would be between three years to natural life.

¶ 5     During the guilty plea hearing, the defendant indicated that he understood the proceedings, did not have any difficulty in communicating with his attorney, had discussed the matter sufficiently with his attorney, and was satisfied with his attorney's performance.  He also indicated that he understood the paperwork associated with his case.  The trial court then admonished him as to the nature of the charge of predatory criminal sexual assault of a child and the possible penalties for that offense, and he indicated his understanding.  Those admonishments included specifically informing the defendant that the offense was a Class X felony punishable by imprisonment for 6 to 60 years in prison because the victim was under the age of 13 (see *id*. § 11-1.40(b)(1)), to be followed by MSR for a term of at least 3 years and possibly for the remainder of his natural life.  The court noted that the defendant would have to serve at least 85% of the time in the Illinois Department of Corrections.  The court admonished him as to his right to plead not guilty,

2

his right to a trial, the State's burden of proof at trial, his rights at trial—including the right to confront and cross-examine the State's witnesses, the right to testify or to remain silent, and the right to call other witnesses to testify—and further admonished him that he would waive all of those rights by pleading guilty. The defendant indicated his understanding of all of those admonishments.

¶ 6    The trial court then asked the prosecutor for a factual basis for the guilty plea. The factual basis included statements that between April 1, 2011, and September 1, 2011, the defendant, who was over the age of 17 at the time, was assisting Dacia Powers with her automobile repairs, and he provided her with courtesy rides on occasion. On one occasion, he provided a ride to her and her three minor daughters; he took Powers to work and was then supposed to take her daughters to their grandmother's house. Instead of immediately taking the girls to their grandmother's house, he pulled his vehicle over and committed an act of sexual penetration where he placed his penis in A.S.'s anus; A.S. was under the age of 13 at the time. After the prosecutor recited the factual basis, the court asked defense counsel, "Does the defense so stipulate?" Defense counsel replied, "We would so stipulate that the State would intend to prove that, Your Honor."

¶ 7    In response to further queries from the trial court, the defendant indicated that he was pleading guilty freely and voluntarily and that nobody had threatened him, pressured him, or promised him anything beyond the terms of the plea agreement. The defendant then pled guilty to predatory criminal sexual assault of a child. The court determined that there was a factual basis for the plea and that the plea was knowing and voluntary. The court accepted the guilty plea and entered judgment thereon.

¶ 8    The trial court then proceeded to sentencing. The defendant declined to exercise his right of allocution. In accordance with the plea agreement, the court sentenced the defendant to imprisonment for six years, to be followed by an MSR term ranging from three years to natural life. The hearing concluded with the court admonishing the defendant about his right to file a motion to withdraw the guilty plea and his right to appeal. On May 1, 2014, the court then entered a written judgment of the defendant's sentence.

¶ 9    On May 28, 2014, the defendant filed a timely *pro se* motion to withdraw his guilty plea and to vacate his sentence, asserting that (1) he was not admonished as to the rights he was giving up by pleading guilty, (2) counsel was ineffective, and (3) the factual basis for the plea was inadequate. He asserted that the facts of the case did not support his guilty plea and that his counsel knew that he wanted to go to trial, but he felt pressured to plead guilty. The trial court took no action on this motion. On January 15, 2015, the defendant filed another *pro se* motion to withdraw his guilty plea and to vacate his sentence, asserting that the facts did not support his plea of guilty, and he was "poorly advised" as to the rights he was waiving by pleading guilty. That same day, the court appointed the public defender to represent him and granted him 30 days to file an amended motion to withdraw guilty plea.

¶ 10    On April 16, 2015, the defendant filed, by appointed counsel, another motion to withdraw guilty plea. He claimed that (1) plea counsel had provided ineffective assistance and (2) he never stipulated to the State's factual basis for the plea. Counsel also filed a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. Feb. 6, 2013).

4

¶ 11    On April 27, 2015, the trial court held a hearing on the defendant's motion to withdraw guilty plea. The defendant was the only witness. He testified that he "really wanted to go to trial" and did not see any "actual basis" for a guilty plea. He never saw a police report in his case. He did not know what exactly plea counsel had done in connection with his case, but he thought that counsel had not properly investigated the case because he never saw "any motions that was [*sic*] filed on anything, as far as like the inconsistency of the police or what they did with the witnesses or questioning them without anyone around and certain things [he had] asked [about]." At the same time, the defendant acknowledged that he "didn't have any witnesses" he wanted counsel to find or to contact. Plea counsel had failed to tell the defendant "a certain lot of things" that he later learned about, "like truth-in-sentencing." He explained that he allowed the police to search his house because he was trying to show them "it was a [BB] gun and a pellet gun." He had forgotten that he had a rifle in the home that he was going to give to his uncle. Approximately two or three weeks before the scheduled start of trial, plea counsel's manner toward the defendant changed. Instead of focusing on trial preparation, counsel started "planting certain seeds in [his] head" and making comments such as, " 'You probably could get this.' " At one point, the defendant thought that plea counsel "was the prosecution." The defendant pleaded guilty because he was "listening to [his] lawyer." The defendant concluded his direct testimony by denying that he had committed the sexual assault and asserting that he always wanted to go to trial and prove his innocence.

¶ 12    On cross-examination by the State, the defendant seemed to acknowledge that the judge at the plea hearing had informed him that he would serve 85% of his sentence, but

5

he stated that he had not understood this information. He also stated that, contrary to his statements at the plea hearing, he was not satisfied with plea counsel's representation, and he did not want to plead guilty. On redirect examination, the defendant testified that when he answered the judge's questions at the plea hearing, he was merely following plea counsel's advice to "say 'yes' to everything," and he was "dumbfounded" when he heard the State describe the nature of the sexual assault that he was charged with committing. At that point in the defendant's testimony, the court asked the defendant, "What did you think you were pleading to?" and the defendant answered, "I was really just confused and distraught at that time."

¶ 13    After hearing arguments from the parties, the trial court denied the defendant's motion to withdraw guilty plea. The court explicitly found that the defendant had been adequately admonished at the plea hearing and that his guilty plea was knowing and voluntary. On April 27, 2015, the court entered a written order to that effect. The defendant then appealed. On direct appeal, the Office of the State Appellate Defender (OSAD) was appointed to represent the defendant. OSAD filed a motion for leave to withdraw as counsel on appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967). In the motion, OSAD asserted that it had considered arguing that the trial court erred by denying the defendant's motion to withdraw guilty plea on the basis that he had received ineffective assistance of counsel for counsel's failure to investigate his case and that plea counsel failed to stipulate to the factual basis for his plea. However, OSAD concluded that these issues had no merit.

6

¶ 14    This court granted OSAD's motion for leave to withdraw and affirmed the judgment of the circuit court. *People v. McKinnon*, 2018 IL App (5th) 150168-U.  In affirming, this court concluded, *inter alia*, that the defendant's vague testimony did not convey any idea of what counsel had failed to investigate or how much an investigation could have improved his prospects in his case. *Id.* ¶ 17.  With regard to plea counsel's representation, the defendant's "only clear testimony" was that he did not have any witnesses that he wanted counsel to find or to contact. *Id.*  Thus, this court found that the defendant had clearly failed to show that counsel failed to investigate his case or that his guilty plea resulted from such a failure. *Id.*  This court also concluded that the defendant was fully informed about his plea agreement and the consequences of his guilty plea, including a term of imprisonment; his plea was knowing and voluntary; his guilty plea did not result from a lack of necessary information; and there was nothing in the facts to support his claim that his plea was coerced. *Id.* ¶¶ 18, 19.

¶ 15    On December 27, 2017, the defendant filed a *pro se* petition for postconviction relief, arguing that he was unlawfully arrested without a warrant or probable cause in violation of the fourth amendment and detained without having been given his *Miranda* warnings.  The motion asserted that while the police were conducting surveillance of him, they unlawfully stopped his vehicle while he was driving.  He was then unlawfully arrested and taken to the Washington Park Police Department.  He was detained at the police department for approximately four hours and was interrogated by the officers about the alleged sexual assault of Powers's daughter.  During the interrogation, he made statements pertaining to the investigation.  The petition also alleged that trial counsel provided

7

ineffective assistance by failing to investigate his case, failing to conduct a background check on Powers, failing to file a motion to suppress his arrest, working together with the State to close his case, and failing to investigate a defense.

¶ 16    Attached to the *pro se* postconviction petition were two police reports from officers with the Washington Park Police Department, which pertained to the stop of the defendant's vehicle and subsequent investigation into the alleged criminal sexual assault. The first police report indicated that on December 2, 2012, at approximately 4 p.m., Officer A. Bonds was dispatched to the Washington Park Police Department concerning a report of an aggravated assault/criminal sexual assault.[1]  At the police department, he met with Powers and her three children.  Powers reported that around the first week of April 2012, she met a man through her mother and sister, who was identified only as Bylow.  She was told that Bylow was good at fixing cars, and he could repair her vehicle.  However, after spending a lot of money on the vehicle, he told her that he was unable to fix it.  He acted concerned about not being able to fix it and offered her transportation to and from work if needed.  Approximately two days later, she had him pick her and her three girls up at 4:45 a.m. and instructed him to drop her off at work and then directly take the girls to their grandmother's house.  She thought he had taken her girls directly to their grandmother's house.

¶ 17    Thereafter, on November 30, 2012, she discovered that her oldest daughter had been sexually assaulted by Bylow.  She explained that she was talking to her daughters about

---

[1]Although the charging instruments allege that the offense took place in 2011, the police report indicates that the offense occurred in 2012.

8

inappropriate touching when her oldest daughter began to cry. She then spoke to the oldest daughter alone to find out what was wrong, and her daughter said that on the day that Bylow was supposed to take them to their grandmother's house, he pulled in a driveway of a white house, pointed a gun at their heads, and told them to say nothing. Her daughter then said that it "hurt real bad," and the girls all started screaming. A lady heard them screaming and came outside to see what was wrong. Bylow then pointed the gun at her and told her to shut up and not say anything. The lady ran two or three houses down and started beating on the door. Once the door opened, she ran inside the house. Bylow then drove to that house, got out of the vehicle, and went inside the house. He told the occupants of the home that if they said anything, he would kill them. While Bylow was inside the house, the oldest daughter pulled up her pants, so that they could run. However, Bylow returned before they could escape. He then took them to their grandmother's house. Before he let them out of the vehicle, he wiped all of their faces and said that if they went inside crying, he would kill them. The officer then spoke with all three girls, and they told the same story.

¶ 18    The second police report indicated that on December 5, 2012, at 5:10 p.m., Detective Juan McCoy and Colonel David Clark were conducting surveillance on the defendant in East St. Louis, and it appeared that the defendant was doing some type of vehicle repair on an unknown vehicle. The defendant later left the area driving his red and silver Ford pickup truck, and Detective McCoy and Colonel Clark caught up to him in Washington Park. The defendant pulled over, and Colonel Clark approached the vehicle. Colonel Clark requested the defendant's driver's license and insurance card and advised

9

the defendant that he needed to speak with the defendant about a matter. The computer check of the defendant's driver's license revealed that his license was suspended. The defendant also told Colonel Clark that he did not have insurance at that time. The defendant was then placed under arrest for driving on a suspended license and without insurance and was transported to the Washington Park Police Department. A hold was then placed on him for felony aggravated criminal sexual assault.

¶ 19 On February 21, 2018, the trial court entered a written order dismissing the defendant's postconviction petition, finding that it was rebutted by the record and patently without merit. The defendant filed a timely notice of appeal.

¶ 20                                    II. ANALYSIS

¶ 21 The defendant appeals his first-stage dismissal of his *pro se* postconviction petition, asserting that his petition stated an arguable claim of ineffective assistance of counsel where his plea counsel failed to investigate and discuss with him the unlawfulness of the stop of his vehicle, and his counsel failed to file a motion to suppress his arrest and subsequent evidence before he entered his guilty plea. In response, the State contends that the defendant's argument should be barred by the doctrine of *res judicata* because the defendant, although using "different terminology and some additional allegations," had already raised the argument that his counsel was ineffective, and the trial court already held a hearing on this claim (the hearing on the motion to withdraw guilty plea). Thus, the State contends that the defendant was given an opportunity to fully litigate this issue. In support, the State cites *People v. Kimble*, 348 Ill. App. 3d 1031, 1034 (2004), which held that a defendant could not avoid the doctrine of *res judicata* by rephrasing previously addressed

issues as ineffective assistance of counsel arguments and by adding an additional allegation that was encompassed by a previously adjudicated issue.

¶ 22　It also appears that the State argues that the defendant has forfeited this argument by failing to raise it earlier.  Specifically, the State argues that "[h]ad defendant wished to argue that plea counsel provided unreasonable assistance as it pertained to investigating defendant's defense to the charges or failure to file a motion to suppress evidence, he should have argued it when he challenged plea counsel's representation in the motion to withdraw."  The State does not make any argument on the merits of the postconviction petition.

¶ 23　A claim that has been raised and decided on direct appeal is barred from being raised in a postconviction petition by *res judicata*.  *People v. Harris*, 206 Ill. 2d 1, 12 (2002).  Issues that could have been presented, but were not, are forfeited.  *Id*.  However, the doctrines of *res judicata* and forfeiture are relaxed where fundamental fairness requires, where the alleged forfeiture stems from the incompetence of appellate counsel, or where the facts relating to the claim do not appear on the face of the original appellate record.  *Id*.

¶ 24　Here, a thorough review of the record reveals that the defendant had never previously raised the claims that plea counsel was ineffective for failing to challenge his vehicle stop and subsequent arrest.  Nor are these previously raised claims that have been rephrased to avoid the consequences of *res judicata* or additional claims that were encompassed by a previously adjudicated claim.  Instead, these are new claims, the basis of which never appeared in the record until the defendant attached the police reports to his

11

*pro se* postconviction petition. The police reports were the only documents in the record that mentioned the circumstances surrounding the sexual assault allegation and the defendant's arrest, and these reports did not appear in the record until the defendant attached them to his *pro se* petition. At the hearing on the defendant's motion to withdraw his guilty plea, the only reference to these reports was when the defendant testified that his plea counsel had never shown him any police reports. Thus, the defendant, who was represented by counsel at the hearing, did not have an opportunity to challenge his vehicle stop or subsequent arrest either at that hearing or on appeal. Further, unlike *Kimble*, there was no testimony from trial counsel that refuted the claims that later appeared in the defendant's *pro se* postconviction petition. Where the basis of the ineffective assistance of counsel claim never previously appeared in the record, it could not have been raised by the defendant or his appellate counsel. Accordingly, the defendant's claim was not barred by *res judicata* or forfeiture.

¶ 25    We now address whether the defendant's *pro se* postconviction petition stated the gist of a constitutional claim. The Act (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a collateral means for a defendant to challenge a conviction or sentence for a violation of a federal or state constitutional right. *People v. Scott*, 2011 IL App (1st) 100122, ¶ 21. The Act establishes a three-stage process for adjudicating a postconviction petition. *People v. Turner*, 2012 IL App (2d) 100819, ¶ 18. At the first stage of the postconviction proceedings, the trial court must determine, without any input from the State, whether defendant's petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016); *Turner*, 2012 IL App (2d) 100819, ¶ 18. A petition is frivolous or patently

12

without merit if it has no arguable basis either in law or in fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A claim has no arguable basis in law or fact if it is "based on an indisputably meritless legal theory," such as one that is "completely contradicted by the record," or "a fanciful factual allegation," including "those which are fantastic or delusional." *Id*. at 16-17.

¶ 26 To survive a dismissal at this initial stage, the postconviction petition need only present the gist of a constitutional claim. *Id*. at 9. A defendant at the first stage need only present a limited amount of detail in the petition. *Id*. The threshold for surviving first-stage proceedings is low because defendants with limited legal knowledge or training draft most postconviction petitions. *Id*. At the first stage, we must accept as true all facts alleged in the postconviction petition, unless the facts are contradicted by the record. *People v. Barghouti*, 2013 IL App (1st) 112373, ¶ 16. Thus, if any claim in the postconviction petition contains statements that, if true, would establish the gist of a constitutional claim, the trial court must order the entire petition docketed for further proceedings under the Act. *People v. Rivera*, 198 Ill. 2d 364, 371 (2001). We review *de novo* the summary dismissal of a postconviction petition. *People v. Harris*, 224 Ill. 2d 115, 123 (2007).

¶ 27 In determining whether defendant has asserted an arguable claim of ineffective assistance of counsel, we are guided by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hodges*, 234 Ill. 2d at 17. To prevail on a claim of ineffective assistance under *Strickland*, a defendant must show both that counsel's performance "fell below an objective standard of reasonableness" and that the deficient

13

performance prejudiced defendant. *Strickland*, 466 U.S. at 687-88. At the first stage of the postconviction proceedings, a petition alleging ineffective assistance may not be summarily dismissed if it is arguable that counsel's performance fell below an objective standard of reasonableness, and it is arguable that defendant was prejudiced. *Hodges*, 234 Ill. 2d at 17.

¶ 28 A defendant does not automatically waive his claim of ineffective assistance of counsel by pleading guilty. *People v. Mendez*, 336 Ill. App. 3d 935, 939 (2003). A guilty plea is only voluntary if it is entered with the assistance of effective counsel. *Id*. A defendant may challenge the voluntariness of his plea by showing that the advice received from counsel was not within the range of competence required for attorneys representing criminal defendants. *People v. Miller*, 346 Ill. App. 3d 972, 980 (2004). If a defendant can establish that his counsel was ineffective for failing to advise him of available defenses, then he may be entitled to withdraw his guilty plea. *Mendez*, 336 Ill. App. 3d at 939. Also, counsel can be found to provide ineffective assistance when he fails to conduct an adequate investigation into the evidence concerning the charges against his client. *People v. Mitchell*, 2012 IL App (1st) 100907, ¶ 52. When a guilty plea is challenged on ineffective assistance grounds, the prejudice prong of *Strickland* is satisfied if a reasonable probability exists that, but for counsel's errors, defendant would not have pled guilty and would have insisted on going to trial. *Miller*, 346 Ill. App. 3d at 982.

¶ 29 Both the fourth amendment of the United States Constitution and the Illinois Constitution of 1970 guarantee the right of individuals to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. The stopping

14

of a vehicle and detaining of its occupants (even if only for a brief period and for a limited purpose) is subject to the fourth amendment's reasonableness requirement. *People v. McDonough*, 239 Ill. 2d 260, 266 (2010). The reasonableness of a vehicle stop is analyzed under the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *McDonough*, 239 Ill. 2d at 267; *People v. Flowers*, 179 Ill. 2d 257, 262-63 (1997). Pursuant to *Terry*, a law enforcement officer may, under appropriate circumstances, briefly detain a person for questioning if the officer reasonably believes that the person has committed, or is about to commit, a crime. *Terry*, 392 U.S. at 21-22; *Flowers*, 179 Ill. 2d at 262. A police officer may make an investigatory stop of a private citizen even though there is no probable cause to make an arrest as long as there is reasonable suspicion to justify the stop. *People v. Messamore*, 245 Ill. App. 3d 627, 629-30 (1993). To support this investigatory stop, the officer must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *People v. Hackett*, 2012 IL 111781, ¶ 20. The investigatory stop must be justified at its inception. *People v. Close*, 238 Ill. 2d 497, 505 (2010); see also *Messamore*, 245 Ill. App. 3d at 630 (the legality of the vehicle stop must be established before the stop). The officer's belief may be less than the level of suspicion required for probable cause. *Hackett*, 2012 IL 111781, ¶ 20. However, the officer's suspicion must amount to more than an inarticulate hunch. *Close*, 238 Ill. 2d at 505. In determining whether reasonable suspicion existed, courts examine the totality of the circumstances surrounding the stop. *People v. Smith*, 331 Ill. App. 3d 1049, 1055 (2002).

¶ 30    Under the fruit of the poisonous tree doctrine, a fourth amendment violation is deemed a "poisonous tree," and any evidence obtained as a result of a fourth amendment violation is subject to suppression as the "fruit" of that poisonous tree. *People v. Lopez*, 2018 IL App (1st) 153331, ¶ 29. This exclusionary rule applies to physical evidence as well as to any "fruits" of a constitutional violation—whether such evidence is tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention. *Id.* The primary purpose of this rule is to deter prohibited government conduct. *Id.*

¶ 31    In the present case, the defendant asserts that his *pro se* postconviction petition stated an arguable claim of ineffective assistance of counsel where his plea counsel failed to investigate and discuss the unlawfulness of the vehicle stop, and his counsel failed to file a motion to suppress arrest and evidence before he entered his guilty plea. In support, the defendant points to the two police reports that were made as a result of the vehicle stop and subsequent arrest. The following information was contained in those two reports: (1) that Powers identified a man called "Bylow" as the person who allegedly sexually assaulted her daughter, (2) that the officers were conducting surveillance on the defendant in connection with the sexual assault, (3) that the defendant was driving a red and silver 1991 Ford pickup truck when he was stopped by an officer who was investigating the sexual assault, (4) that a computer check revealed that the defendant's driver's license was suspended, (5) that the defendant also told the officer that he did not have any insurance, (6) that he was placed under arrest for driving on a suspended driver's license and without

16

insurance, and (7) that a hold was placed on him for felony aggravated criminal sexual assault. There was nothing in the arresting officer's report as to whether the officer had observed the defendant committing a traffic violation before the defendant was pulled over. There was also nothing in the report to indicate that the officer had a reasonable suspicion to stop the defendant's vehicle for the traffic offenses of driving while his driver's license was suspended and with no insurance until after the officer completed the stop.

¶ 32    Also, the arresting officer's report indicated that he had stopped the defendant in connection with the alleged criminal sexual assault, which was based on the information provided by Powers. However, there was nothing contained in the record connecting the defendant to the man that Powers called "Bylow"; for example, the report does not indicate that Powers noted that the alleged offender drove the vehicle that the defendant had been driving when he was stopped by the police (a red and silver 1991 Ford pickup truck). Compare with *People v. Young*, 306 Ill. App. 3d 350, 353 (1999) (the officer had reasonable suspicion to stop defendant's vehicle where, *inter alia*, the vehicle matched the description of the vehicle provided by the victim).

¶ 33    Moreover, it was arguable that the evidence on which the defendant's subsequent arrest for aggravated criminal sexual assault was based, *i.e.*, the statements provided by Powers and her daughters, did not amount to probable cause to arrest the defendant. Probable cause to arrest exists when the facts known to the officer at the time of arrest are sufficient to lead a reasonable person to conclude that a crime has been committed and that the arrestee has committed the crime. *People v. Lee*, 214 Ill. 2d 476, 484-85 (2005). According to the arresting officer's report, after the defendant was arrested for driving

without a driver's license and driving without insurance and was transported to the police station, a hold was placed on him for the alleged sexual assault; this led to his eventual arrest for aggravated criminal sexual assault. The basis for this arrest appears to be the same information provided by Powers and her daughters that was contained in the police reports, which, as we concluded above, did not show a connection between the alleged crime and the defendant. Thus, it is at least arguable that counsel's failure to file a motion to suppress the vehicle stop and arrest and failure to investigate and inform the defendant as to this potential issue fell below an objective standard of reasonableness.

¶ 34    In making this decision, we want to make clear that we are not finding that the police officers did not have reasonable suspicion to detain the defendant or probable cause to arrest him for the sexual assault. Instead, we are saying that, based on the record before us, which contains no additional information concerning the connection between the alleged offense and the defendant, it is arguable that there was a fourth amendment violation with regard to the vehicle stop and subsequent arrest and that reasonable counsel would have at least discussed this issue with his client when the client was deciding whether to plead guilty.

¶ 35    As for prejudice, following the stop and arrest, the defendant made statements to the police, and the police searched his home and discovered a pellet gun and a rifle. The discovery of the pellet gun and rifle led to a felony charge of unlawful possession of a weapon (count II) and three misdemeanor offenses of aggravated assault (counts III, IV, and V). Those charges were subsequently dismissed as part of the defendant's negotiated plea agreement. Thus, it was arguable that the dismissal of those charges contributed to

18

the defendant's decision to plead guilty to the criminal sexual assault and had he known that there was a possible basis to challenge those offenses, there was a reasonable probability that he would not have pled guilty to predatory criminal sexual assault of a child and would have insisted on going to trial. There was a reasonable probability that the defendant was prejudiced. As previously noted, to survive dismissal at the first stage of the postconviction proceedings, a petition need only state the gist of a constitutional claim, which is a low threshold. See *People v. Allen*, 2015 IL 113135, ¶ 24. Given that we have found that the defendant has satisfied this low threshold by presenting the gist of a constitutional claim, we conclude that the trial court erred in dismissing the defendant's postconviction petition. We reverse the trial court's summary dismissal at the first stage of postconviction proceedings and remand for second-stage postconviction proceedings.

¶ 36                                III. CONCLUSION

¶ 37   The judgment of the circuit court of St. Clair County is hereby reversed, and the defendant's case is remanded for second-stage postconviction proceedings.

¶ 38   Reversed and remanded.